**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BABY JOGGER, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 1:24-CV-11582-ADB |
| MONAHAN PRODUCTS, LLC, D/B/A UPPABABY, | |
| Defendant. | |

**PLAINTIFF BABY JOGGER, LLC'S RESPONSE IN OPPOSITION TO
DEFENDANT MONAHAN PRODUCTS, LLC, D/B/A UPPABABY'S
<u>MOTION FOR SUMMARY JUDGMENT OF EQUITABLE ESTOPPEL</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF RELEVANT FACTS ........................................................... 2

    A.  Baby Jogger's Innovation And The Asserted Patents.............................. 2

    B.  Baby Jogger's Communications With UPPAbaby ................................... 2

III.  SUMMARY JUDGMENT STANDARD ........................................................... 5

IV.  ARGUMENT ...................................................................................................... 5

    A.  There Was No Misleading Conduct By Baby Jogger For Which UPPAbaby Could Reasonably Infer That Baby Jogger Did Not Intend To Enforce Its Rights In the '869 Patent ...................................................................................................... 6

        1.  Baby Jogger's silence or inaction does not support such an inference ...... 6

        2.  The parties' course of conduct does not support an inference that Baby Jogger had agreed to not assert the '869 Patent against UPPAbaby ........... 9

    B.  UPPAbaby's Motion Fails To Show That Any Of Its Activities Were In Reliance On Any Conduct By Baby Jogger ....................................................................... 12

    C.  UPPAbaby Fails To Demonstrate It Suffered Any Prejudice Due To Its Reliance On Baby Jogger's Alleged Conduct ....................................................................... 15

        1.  Lack of economic prejudice.................................................................... 15

        2.  Lack of evidentiary or defense prejudice................................................. 17

    D.  Equitable Factors Warrant Denial Of UPPAbaby's Motion................................ 18

    E.  UPPAbaby's Equitable Estoppel Defense Is Limited To the '869 Patent ........... 19

    F.  At A Minimum, Discovery Should Be Permitted To Address the Material Factual Disputes Raised In UPPAbaby's Motion............................................................. 20

V.  CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992).................................................................... *passim*

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..........................................................................................5

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
  605 F.3d 1305 (Fed. Cir. 2010)...................................................8, 11, 12, 16, 17

*Attallah v. United States,*
  955 F.2d 776 (1st Cir. 1992)............................................................................5

*Banhazl v. Am. Ceramic Soc'y*,
  602 F. Supp. 3d 198 (D. Mass. 2022) ..............................................................8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..........................................................................................5

*Czerwienski v. Harvard Univ.*,
  664 F. Supp. 3d 181 (D. Mass. 2023) ..............................................................20

*Enzo Biochem, Inc. v. Gen-Probe, Inc.*,
  424 F.3d 1276 (Fed. Cir. 2005)....................................................................9, 10

*Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*,
  60 F.3d 770 (Fed. Cir. 1995)...................................................13, 14, 16, 18

*Hemstreet v. Computer Entry Systems Corp.*,
  972 F.2d 1290 (Fed. Cir. 1992)......................................................7, 8, 14

*High Point SARL v. Sprint Nextel Corp.*,
  817 F.3d 1325 (Fed. Cir. 2016)....................................................................14, 15

*John Bean Techs. Corp. v. Morris & Assocs., Inc.*,
  887 F.3d 1322 (Fed. Cir. 2018).........................................................................19

*Kaufman v. Microsoft Corp.*,
  34 F.4th 1360 (Fed. Cir. 2022) ........................................................................16

*Meyers v. Asics Corp.*,
  974 F.2d 1304 (Fed. Cir. 1992)................................................................ *passim*

*Meyers v. Brooks Shoe Inc.*,
    912 F.2d 1459 (Fed. Cir. 1990)............................................................7, 15

*Radio Sys. Corp. v. Lalor*,
    709 F.3d 1124 (Fed. Cir. 2013)...............................................................19

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
    580 U.S. 328 (2017)..............................................................................5, 18

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
    767 F.3d 1339 (Fed. Cir. 2014)............................................................8, 13

*Scholle Corp. v. Blackhawk Molding Co., Inc.*,
    133 F.3d 1469 (Fed. Cir. 1998)..............................................8, 9, 11, 16, 17

| **RULE(S)** | **Page(s)** |
| --- | --- |

Federal Rules of Civil Procedure
    Rule 56(a)...........................................................................................5
    Rule 56(d) ..........................................................................................20

## I.   <u>INTRODUCTION</u>

Despite no discovery having taken place in this litigation, Defendant Monahan Products, LLC d/b/a UPPAbaby ("UPPAbaby") has filed a Motion for Summary Judgment of Equitable Estoppel (the "Motion") that is filled with disputed facts and contrary to UPPAbaby's representation that this is "the quintessential fact pattern for equitable estoppel," its Motion fails to establish any of the required elements of equitable estoppel. First, UPPAbaby fails to show any misleading conduct on the part of Plaintiff Baby Jogger, LLC ("Baby Jogger") that would lead it to reasonably infer that Baby Jogger had acquiesced to UPPAbaby's infringement. The entirety of Baby Jogger's actions regarding UPPAbaby are two letters and one email sent by Baby Jogger over the course of four months. These communications did not threaten litigation but instead invited UPPAbaby to  work with Baby Jogger towards a resolution. UPPAbaby chose not to respond to Baby Jogger's final letter. Second, UPPAbaby fails to adequately address, much less present undisputed facts to support, the second element of its defense—that it relied on any conduct by Baby Jogger in taking action. Finally, in claiming it suffered prejudice, UPPAbaby has not shown any nexus between the alleged prejudice and Baby Jogger's decision not to file suit earlier.

The reality is that UPPAbaby cannot show any misleading conduct by Baby Jogger because there was none. It likewise cannot show that it relied on any alleged conduct in moving forward with its already released Vista and RumbleSeat products. By 2015, prior to any communications between the parties, UPPAbaby had already invested in, manufactured, and marketed these products. Nothing about the parties' brief interaction influenced any decision by UPPAbaby. These were simply business decisions made by UPPAbaby.

For at least these reasons Baby Jogger believes that UPPAbaby's Motion is fatally flawed and must be denied. But to the extent the Court believes the Motion presents a potential basis for relief, Baby Jogger alternatively requests that UPPAbaby's Motion be denied with leave to refile,

so that Baby Jogger can conduct discovery on the fact-specific issues that UPPAbaby has raised, but supported with only conclusory statements.

## II.    STATEMENT OF RELEVANT FACTS

### A.    Baby Jogger's Innovation And The Asserted Patents

Baby Jogger developed an innovative seat attachment that enables one to convert a single stroller into a double stroller. Baby Jogger's Statement of Additional Material Facts ("SAF") ¶¶ 1-6. On December 4, 2008, Baby Jogger filed U.S. Provisional Application No. 61/119,920 to protect its innovation. SAF ¶ 1; Leonard Decl. ¶ 3 (Ex. 1).[1] This seat attachment was novel for several reasons, including that it could removably connect a second seat that was capable of being oriented forward-facing or backward-facing. SAF ¶¶ 1-6. Baby Jogger continued to innovate, obtaining a robust family of patents covering its innovations. This includes the five Asserted Patents listed below, which all claim priority to the initial provisional application. SAF ¶¶ 2-7.[2]

| U.S. Patent No. 8,955,869 (the "'869 Patent") | Filed April 25, 2014 | Issued February 17, 2015 |
| U.S. Patent No. 9,403,550 (the "'550 Patent") | Filed January 15, 2015 | Issued August 2, 2016 |
| U.S. Patent No. 11,192,568 (the "'568 Patent") | Filed March 27, 2020 | Issued December 7, 2021 |
| U.S. Patent No. 11,505,231 (the "'231 Patent") | Filed July 29, 2022 | Issued November 22, 2022 |
| U.S. Patent No. 11,878,729 (the "'729 Patent") | Filed October 31, 2022 | Issued January 23, 2024 |

### B.    Baby Jogger's Communications With UPPAbaby

On December 4, 2015, Baby Jogger sent a letter notifying UPPAbaby of the '869 Patent, owned by Baby Jogger, entitled Seat Attachment for a Stroller. SAF ¶ 8. This letter stated that "[i]t

---

[1] "Leonard Decl." refers to the Declaration of Robert J. Leonard in Support of Baby Jogger LLC's Response in Opposition to Defendant's Motion for Summary Judgment of Equitable Estoppel, filed concurrently herewith.

[2] Thus, "Asserted Patents" refers collectively to the '869 Patent, the '550 Patent, the '568 Patent, the '231 Patent, and the '729 Patent.

has come to our attention that UPPA Baby is selling products, such as the Vista stroller, that may be covered by one or more claims in the '869 patent." SAF ¶ 9; RSMF ¶ 8. The letter requested that UPPAbaby contact Baby Jogger within the next ten business days "to discuss potential resolution of this issue." SAF ¶ 10 RSMF ¶ 9. Baby Jogger followed this letter with a December 18, 2015 email to UPPAbaby providing details on the features of UPPAbaby's products it was concerned about. SAF ¶ 14. The author of this email stated, "I look forward to working with you to resolve this issue. Please let me know if you need anything further." SAF ¶ 15. Neither Baby Jogger's letter nor the email threatened UPPAbaby with litigation or immediate or vigorous enforcement, or accused UPPAbaby's 2008 RumbleSeat as infringing. SAF ¶¶ 11-13, 16-18.

On December 30, 2015, UPPAbaby responded with a letter stating its belief that it did not infringe any claims of the '869 Patent and that the claims may be invalid. RSMF ¶¶ 11, 12.[3] UPPAbaby argued that the claims of the '869 Patent may be invalid based on its disclosure of its original RumbleSeat product at an ABC Tradeshow in September 2008. RSMF ¶¶ 1, 3, 12, 16-17. The letter further claimed that some unidentified "Baby Jogger representatives" saw its RumbleSeat at this same tradeshow, and suggested that "to the extent that Baby Jogger representatives stole the idea from UPPAbaby, then the patent is invalid." *Id*. No details were provided to support this contingent accusation. *See id*.

UPPAbaby's letter also referenced unrelated "confidential business discussions" that purportedly had occurred between "Newell Rubbermaid and UPPAbaby." RSMF ¶ 14. Attempting to draw a connection between those discussions and Baby Jogger's identification of potentially infringing activity by UPPAbaby, UPPAbaby suggested that "Newell Rubbermaid appears to be

---

[3] "RSMF" refers to Plaintiff's Response to Defendant's Statement of Material Facts, filed concurrently herewith.

engaging in unfair business practices and attempting to disrupt UPPAbaby's business." *Id*. This letter did not provide any additional details on this issue and did not threaten to bring a claim against Baby Jogger (or Newell Rubbermaid). ECF 31-2 at 2; ECF 42-2 at 4; RSMF ¶ 14.

On March 15, 2016, Baby Jogger responded with a letter addressing and refuting UPPAbaby's allegations related to the companies' unrelated business discussions stating that:

> The current matter relates to intellectual property and is unrelated to those discussions. Baby Jogger simply values its innovations and must protect its intellectual property . . . Nonetheless, should you have any remaining specific concerns, I am happy to discuss.

SAF ¶ 19; RSMF ¶¶ 19, 20. Baby Jogger then addressed UPPAbaby's allegations that its original RumbleSeat, alleged to have been publicly disclosed in 2008, was covered by the claims of the '869 Patent. SAF ¶¶ 21. Baby Jogger informed UPPAbaby that the product Baby Jogger was concerned about was the *2015 version* of its RumbleSeat, which was materially different that the original 2008 version:

> While we understand that UPPA may have sold an earlier version of its Rumble Seat in the 2009 timeframe, the seat differed from the current seat in certain key respects, including that it would only allow the second seat to face the rearward direction.

SAF ¶¶ 21-22; RSMF ¶¶ 22-23. Again, this letter did not threaten UPPAbaby with litigation or immediate and vigorous enforcement. SAF ¶¶ 23-24; RSMF ¶ 24. Instead, Baby Jogger again sought to work with UPPAbaby, the author again stating: "I look forward to working together towards a resolution." SAF ¶ 25. At this time, only the '869 Patent had issued. SAF ¶¶ 2-6, 26.

UPPAbaby never responded and never took Baby Jogger up on its offer to discuss any remaining concerns UPPAbaby may have had. Other than these four terse letters/emails sent over the course of just four months, Baby Jogger and UPPAbaby had no discussions regarding UPPAbaby's products and the '869 Patent or any other Baby Jogger patent.

### III.    <u>SUMMARY JUDGMENT STANDARD</u>

Summary Judgment is only appropriate when, viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, there are "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts must "consider the undisputed facts in the light most favorable to the non-movant." *Attallah v. United States*, 955 F.2d 776, 779 (1st Cir. 1992).

### IV.    <u>ARGUMENT</u>

To set forth a defense of equitable estoppel three elements must be established:

a. The patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer. "Conduct" may include specific statements, action, inaction, or silence where there was an obligation to speak.

b. The alleged infringer relies on that conduct.

c. Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992), *abrogated on other grounds (laches) by SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017). Unlike laches, "no presumption adheres to the defense of equitable estoppel." *Id*. at 1043 "[T]he relief granted in estoppel is broader than in laches" such that "the defendant should carry a burden to establish the defense based on proof, not a presumption." *Id*. Because nothing about Baby Jogger's conduct approaches the "misleading conduct" standard that UPPAbaby must meet, and as there are genuine disputes of material fact as to all three of the required elements of UPPAbaby's equitable estoppel defense, summary judgment must be denied.

**A.    There Was No Misleading Conduct By Baby Jogger For Which UPPAbaby Could Reasonably Infer That Baby Jogger Did Not Intend To Enforce Its Rights In the '869 Patent**

***1.    Baby Jogger's silence or inaction does not support such an inference***

To satisfy the first element of equitable estoppel, UPPAbaby was required to show misleading conduct by Baby Jogger that "supported an inference that [Baby Jogger] did not intend to press an infringement claim against [UPPAbaby]." *Aukerman*, 960 F.2d at 1042. UPPAbaby's argument is that the alleged "misleading conduct" here was Baby Jogger's two letters in late 2015 to March 2016[4] followed by a period of silence and/or inaction. ECF 42 at 13.[5] But, the Federal Circuit has instructed that "silence alone will not create an estoppel unless there was a clear duty to speak . . . or somehow the patentee's continued silence reenforces the defendant's inference from the plaintiff's known acquiescence that the defendant will be unmolested." *Aukerman*, 960 F.2d at 1043-44. "[P]laintiff's inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Id.* at 1042. Importantly, to justify summary judgment of equitable estoppel, an inference that a patentee made a misleading communication by omission or acquiescence "must be the *only* possible inference from the evidence." *Id.* at 1044 (reversing summary judgment of equitable estoppel where different inferences could be drawn).

Nothing in the parties' terse communications, or the silence that followed, supports the sole inference that Baby Jogger had misled UPPAbaby to believe it had acquiesced to its infringement of the '869 Patent. Baby Jogger sent UPPAbaby just three communications over the course of a

---

[4] Shortly after its initial letter, Baby Jogger also sent a follow-up email providing additional details regarding its concerns of potential infringement of the '869 Patent. SAF ¶¶ 14-18.

[5] Unless stated otherwise, citations to the docket are to the docket page number as opposed to the document page number.

four month period. *See* ECF 42-2 at 2, 7-8; Ex. 2. The first letter notified UPPAbaby of the '869 Patent, expressed its belief that an UPPAbaby product "may be covered by one or more claims in the '869 Patent," and invited UPPAbaby to discuss this issue. SAF ¶¶ 8-10. Baby Jogger's email simply followed-up on its initial letter, provided additional details regarding its concerns, and expressed its intention to work with UPPAbaby towards a resolution. SAF ¶¶ 14-15. Baby Jogger's final letter primarily responded to the unfounded accusations set forth in UPPAbaby's response letter and again expressed its desire to work with UPPAbaby towards a resolution. SAF ¶¶ 19-22.

None of Baby Jogger's communications threaten immediate or vigorous enforcement of Baby Jogger's patent rights nor did they convey the impression that it would acquiesce to UPPAbaby's infringement of the '869 Patent. SAF ¶¶ 11-12, 16-17, 23-24. In *Meyers v. Asics Corp.*, the court reversed a grant of summary judgment to defendant based on estoppel, finding that "a suggestion of infringement coupled with an offer to license followed by silence" would not create estoppel where defendants could not show patentee "threatened immediate and vigorous enforcement of his patents and then by silence lulled them into the belief that he did not intend to enforce his patents." 974 F.2d 1304, 1309 (Fed. Cir. 1992). Like the court found in *Meyers v. Asics*, a reasonable interpretation of Baby Jogger's letters was that they were invitations to enter into business discussions with UPPAbaby. *Id.*; *see also Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1462 (Fed. Cir. 1990) ("[A] mere verbal charge of infringement, if made, followed by silence [is] not sufficient affirmative conduct to induce a belief that [Plaintiff] had abandoned an infringement claim."), *overruled on other grounds (laches) by Aukerman*, 960 F.2d 1020.

Further, as Baby Jogger had sent the last communication and expressed its interest to work with UPPAbaby, the onus was on UPPAbaby to communicate with Baby Jogger. But UPPAbaby never responded. *Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292, 1295 (Fed.

Cir. 1992) (reversing finding of equitable estoppel where onus was on the accused infringer to respond). Because UPPAbaby never provided any response or further communication, any inaction was on the part of UPPAbaby. *Id*. at 1295. Baby Jogger's communications seeking to enter into discussions with UPPAbaby, followed by UPPAbaby's silence, does not support an inference that Baby Jogger did not intend to ever assert infringement of the '869 Patent against UPPAbaby. *See, e.g.*, *Banhazl v. Am. Ceramic Soc'y*, 602 F. Supp. 3d 198, 234 (D. Mass. 2022) ("Defendant has pointed to no evidence in the record to support its argument that Plaintiff ever communicated that it would not sue Defendant or would acquiesce to infringement"), *amended*, No. 16-CV-10791-ADB, 2023 WL 159842 (D. Mass. Jan. 11, 2023). And, in *Hemstreet,* the court held that, while "equitable estoppel may in some instances be based upon a misleading silence, mere silence must be accompanied by some *other* factor which indicates that the silence was sufficiently misleading as to amount to bad faith." 972 F.2d at 1295. There is no such showing here. At a minimum, there are disputed facts concerning the parties' communications and the parties' respective understanding and/or interpretations of those communications.

The facts here are similar to those in *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, in which the Federal Circuit distinguished both the *Scholle* and *Aspex* cases relied upon by UPPAbaby and reversed the grant of summary judgment of equitable estoppel. 767 F.3d 1339, 1349-50 (Fed. Cir. 2014), *vacated in part (laches)*, 580 U.S. 328 (2017). In *SCA Hygiene*, the court found that the parties' interactions were "meager," involving exchanges of "only six terse letters over a course of eight months." *Id*. at 1350. Further, the court found relevant that the accused infringer never sought further comment from the patentee and the parties never engaged in serious discussions. *Id*. The parties' interactions here are even more meager, consisting of just four communications over the course of four months. And UPPAbaby never responded to Baby

Jogger's letter offering to work together towards a resolution, so the parties never had meaningful discussions. Consistent with *SCA Hygiene Products*, there is no equitable estoppel here.

### 2.    *The parties' course of conduct does not support an inference that Baby Jogger had agreed to not assert the '869 Patent against UPPAbaby*

Because silence alone will not create estoppel in the absence of a clear duty to speak, courts will also look to the parties' course of conduct in determining whether an alleged infringer is reasonable in inferring that a patentee has waived its patent rights. *Scholle Corp. v. Blackhawk Molding Co., Inc.*, 133 F.3d 1469, 1472 (Fed. Cir. 1998); *Aukerman*, 960 F.2d at 1043. "On summary judgment, such inference must be the *only* possible inference from the evidence." *Id*. at 1044 (emphasis in original). Here, UPPAbaby does not argue, nor could it, that Baby Jogger had a clear duty to speak. Instead, UPPAbaby attempts to manufacture an argument that the parties' course of dealings played a role. ECF 42 at 14-16. But this argument fails as it is based on disputed facts as well as unsupported and conclusory statements.

UPPAbaby's December 30, 2015 letter represented that "Newell Rubbermaid and UPPAbaby were in business discussions" prior to receiving Baby Jogger's December 4, 2015 notice letter. ECF 42 at 14; RSMF ¶¶ 13-14. Neither UPPAbaby's letter, nor the instant Motion, offer any additional facts regarding the nature or timing of these discussions. *See* ECF 42-2 at 4-5.[6] Despite this absence of facts, UPPAbaby improperly concludes that by sending its notice letter regarding the '869 Patent, Baby Jogger "appears to be engaging in unfair business practices and attempting to disrupt UPPAbaby's business." RSMF ¶ 14. Contrary to the attorney argument in its Motion (ECF 42 at 14-15), nothing in UPPAbaby's letter expressly asserts an intent to bring a claim against Baby Jogger (ECF 42-2 at 4; RSMF ¶ 14). *Enzo Biochem, Inc. v. Gen-Probe, Inc.*,

---

[6] And the December 18, 2015 email from Baby Jogger to UPPAbaby's counsel recites Baby Jogger's understanding that those business talks had ended. Leonard Decl. ¶ 4 (Ex. 2).

424 F.3d 1276, 1284 (Fed. Cir. 2005) (distinguishing attorney argument from evidence). And there is no support for UPPAbaby's conclusion that, as a result of this baseless accusation, Baby Jogger had decided to forgo its rights to assert the '869 Patent. *See* ECF 42 at 14.

In reality, the facts warrant the opposite conclusion. Baby Jogger's March 15, 2016 letter specifically responded to and refuted these allegations, noting that the patent matter was unrelated to any prior business discussions and inviting UPPAbaby to reach out if it had any specific concerns. SAF ¶ 20; RSMF ¶¶ 5, 20-21. UPPAbaby ignores these facts, falsely arguing that Baby Jogger did not deny UPPAbaby's reference to unfair business practice. *See* ECF 42 at 14-15; RSMF ¶ 20. Further, UPPAbaby's purported belief that Baby Jogger had engaged in some unfair business practice is belied by its failure to respond to Baby Jogger's March 15, 2016 letter, which refuted these accusations, specifically requested UPPAbaby to reach out if it still had any concerns, and invited it to work with Baby Jogger towards a resolution. SAF ¶ 20; RSMF ¶ 20. This placed the onus on UPPAbaby to respond. It never did. UPPAbaby's attempt to construct some nefarious scheme on the part of Baby Jogger lacks any factual support.

UPPAbaby's Motion next cites its suggestion in its December 30, 2015 letter that Baby Jogger may have stolen the invention disclosed in the '869 Patent. ECF 42 at 15; RSMF ¶¶ 16-17, 22-23. This argument lacks merit as UPPAbaby does not provide factual support, let alone undisputed facts, to support this allegation. UPPAbaby argues that an unidentified individual who attended a tradeshow in September 2008 may have seen its original RumbleSeat product and incorporated some ideas from that disclosure into Baby Jogger's December 4, 2008 provisional application. ECF 42 at 15; RSMF ¶¶ 1, 3-4, 16-17. But UPPAbaby's Motion readily admits that it lacks any reasonable basis for this allegation, noting that it would take "complicated discovery" to attempt to prove this unfounded allegation. ECF 42 at 15.

Further, contrary to what UPPAbaby argues, Baby Jogger refuted this allegation as well. RSMF ¶¶ 22-23. Baby Jogger specifically informed UPPAbaby that UPPAbaby's original RumbleSeat product shown in September 2008 was not at issue since it was materially different from both the disclosure in the '869 Patent and the newer 2015 version of the RumbleSeat that Baby Jogger was concerned about. SAF ¶¶ 21-22; RSMF ¶¶ 22-23. UPPAbaby again ignores these facts, falsely arguing that Baby Jogger did not deny this baseless allegation. ECF 42 at 15. There simply was no course of dealing between the parties that supports an inference, let alone the ***only*** possible inference, that Baby Jogger had agreed not to assert the '869 Patent against UPPAbaby.

UPPAbaby's reliance on the Federal Circuit's decisions in *Scholle* and *Aspex* is misplaced. In *Scholle Corp. v. Blackhawk Molding Co., Inc.*, the patentee notified the accused infringer that it was infringing and demanded it cease and desist from further sales. 133 F.3d 1469, 1470 (Fed. Cir. 1998). In response, the accused infringer presented a new alternative product to the patentee, sent the patentee samples, and informed them it would consider the alternative product non-infringing unless the patentee advised it otherwise. *Id*. But the patentee did not respond. *Id*. The parties also had numerous additional contacts after this meeting, many of which involved the patent at issue, including discussions related to a pending litigation the patentee filed asserting that same patent against another party. *Id*. at 1470-71. The court found that the patentee's silence in the face of being presented with the alternative product, coupled with the "extensive contact" between the parties supported the inference that the accused infringer would not be sued. *Id*. at 1472-73. None of these facts exist here. Unlike in *Scholle*, there was never a threat of a lawsuit by Baby Jogger, no additional contacts between the parties after the initial exchange of letters, and UPPAbaby did not submit any new versions of its products to Baby Jogger, much less say it would presume the new product did not infringe (or that it would not be sued) unless it heard back from Baby Jogger.

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.* is also inapposite.  There, after the parties had engaged in related patent litigation in the past, the accused infringer began marketing a product similar to what had been litigated before. 605 F.3d 1305, 1308 (Fed. Cir. 2010). The patentee wrote the accused stating its "strong intention to fully and vigorously enforce [its] rights" under four patents and describing the issue as a "very urgent and serious matter." *Id*. Later, though, the patentee dropped one of the patents from the discussions, including not providing infringement contentions as to that patent, and then tried to raise it three years later. *Id*. at 1308, 1312. No such facts exist here. Baby Jogger made no threats to vigorously enforce its patent, there is no history of prior litigation between the parties, and there was no history of detailed discussions on other patents. SAF ¶¶ 11-12, 16-17, 23-24. *Aspex* is inapplicable.

While UPPAbaby argues that its unfounded allegations of unfair business practices and theft led it to reasonably infer that Baby Jogger would not assert the '869 Patent against it, these allegations lack undisputed factual support, and such an inference is not reasonable given the facts discussed above.[7] Certainly, its conclusion that Baby Jogger would not assert its rights is not the *only possible inference* from this evidence. *Aukerman*, 960 F.2d at 1043-44. An equally plausible inference is that Baby Jogger decided to wait and see whether market developments warranted the significant time and expense of litigation. UPPAbaby has not established the first element of its equitable estoppel defense.

### B.    UPPAbaby's Motion Fails To Show That Any Of Its Activities Were In Reliance On Any Conduct By Baby Jogger

To satisfy the second element of equitable estoppel, UPPAbaby had to show that "it substantially relied on the misleading conduct of the patentee in connection with taking some

---

[7] UPPAbaby's conclusory statements about Baby Jogger's state of mind based on the parties' brief communications (*see, e.g.*, ECF 42 at 9, 14-15; ECF 42-1, ¶¶ 16-17) are unsupported and irrelevant to whether UPPAbaby reasonably inferred that Baby Jogger would not bring suit.

action." *Aukerman*, 960 F.2d at 1042-43. "To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with [its investment]." *Id.* at 1043. As discussed above, UPPAbaby cannot show that there was any misleading conduct by Baby Jogger. It is axiomatic then, that UPPAbaby could not have relied on misleading conduct where none existed. Further, UPPAbaby has failed to establish reliance.

Although reliance is essential to equitable estoppel, UPPAbaby's Motion spends little time attempting to address or support this element of its defense. In fact, in its argument section, UPPAbaby presents no argument that it substantially relied on *any* conduct by Baby Jogger in taking any specific action. *See* ECF 42 at Part IV.B. It is only in the introduction where UPPAbaby states that it "relied on Baby Jogger's letter and subsequent inaction for the next eight years." ECF 42 at 5. But such conclusory statements are insufficient to establish reliance. *See, e.g.*, *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995) (rejecting conclusory assertions as a basis for summary judgment of equitable estoppel); *Meyers*, 974 F.2d at 1309 (same). UPPAbaby's Motion also states that "Baby Jogger's eight-year delay caused economic prejudice to UPPAbaby." ECF 42 at 17. But this statement, to the extent it was intended to support reliance, applies the incorrect standard. As the Federal Circuit has explained, "[t]here is a difference between prejudice that *results from* a patentee's alleged misrepresentation and prejudice caused by *reliance upon* it." *SCA Hygiene*, 767 F.3d at 1350, 1350 (emphasis in original). No argument is made that any alleged economic prejudice was incurred because UPPAbaby substantially relied on Baby Jogger's conduct.

And assuming, *arguendo*, that UPPAbaby's Motion had properly addressed the issue of reliance, there are no facts that show that it relied on any conduct by Baby Jogger, let alone

misleading conduct, in taking *any* action. UPPAbaby primarily focuses on the prejudice it allegedly suffered, arguing that it invested "millions of dollars in research and development (R&D) costs," but provides no facts to support a nexus between these costs and any delay by Baby Jogger. *Hemstreet*, 972 F.2d at 1293-94 (reversing finding of equitable estoppel where accused infringers expenditures had "no explicitly proven nexus to the patentee's delay"). The declaration of the President of UPPAbaby, submitted in support of its Motion, does not state that any of the actions listed were taken in reliance on any conduct by Baby Jogger. *See* ECF 42-1, ¶¶ 19-23. Importantly, UPPAbaby *had already introduced and begun selling its 2015 versions of both its Vista stroller and new RumbleSeat prior to any communications between the parties* related to the '869 Patent, so any R&D expenditures had already been incurred. *See* SAF ¶ 27. There also are no facts that any costs related to later-developed versions of these same products had any nexus to Baby Jogger's alleged conduct. In sum, there is no showing of a change of economic position by UPPAbaby in reliance on Baby Jogger's conduct, versus a business decision to develop new versions of the products. *Hemstreet*, 972 F.2d at 1294 ("The change must be because of and as a result of delay, not simply a business decision to capitalize on a market opportunity.").

Collectively, nothing demonstrates that UPPAbaby relied on any alleged misleading conduct by Baby Jogger, versus the conclusion that it made its own business decision. At minimum, the latter is a reasonable inference, and UPPAbaby presents no facts that it would have acted differently had Baby Jogger filed suit sooner. *Gasser*, 60 F.3d at 776 (finding no reliance where accused infringer paid little attention to patentee's complaints, asserting non-infringement and invalidity); *Meyers*, 974 F.2d at 1309.

While UPPAbaby relies on *High Point SARL v. Sprint Nextel Corp.*, the facts of that case have no application here. 817 F.3d 1325 (Fed. Cir. 2016). There the court held defendants had

shown reliance where there was unrebutted witness testimony that it "would have acted differently if the threat of litigation was a possibility." *Id*. at 1331. Further, the parties had previously executed a license to the patents-in-suit and the patentee provided defendant with the allegedly infringing equipment. *Id.* at 1330-31. No such facts exist here. Accordingly, UPPAbaby has not established that it substantially relied on any conduct by Baby Jogger in taking any action.

### C.    UPPAbaby Fails To Demonstrate It Suffered Any Prejudice Due To Its Reliance On Baby Jogger's Alleged Conduct

The third element of equitable estoppel required UPPAbaby to establish that "[d]ue to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." *Aukerman*, 960 F.2d at 1028. "[T]he prejudice may be a change of economic position or loss of evidence." *Id*. at 1043. Here, because UPPAbaby cannot show that it relied on any conduct by Baby Jogger there can be no prejudice as a result of that conduct. In addition, UPPAbaby has not shown it was materially prejudiced.

#### 1.    *Lack of economic prejudice*

"Economic prejudice may arise where a defendant . . . will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Id*. at 1033. "[C]ourts must look for a *change* in the economic position of the alleged infringer during the period of delay." *Id*. at 1033. Here, UPPAbaby does not offer any facts to demonstrate that had suit been brought sooner, it would not have incurred the same monetary investments. As discussed above, at the time Baby Jogger notified it of the '869 Patent, UPPAbaby had already invested in, marketed, and began selling its 2015 versions of its Vista Stroller and RumbleSeat. *See, e.g.*, *Meyers v. Brooks Shoe*, 912 F.2d at 1469 (finding no prejudice where "the record supports the conclusion that the time and money [accused infringer] spent . . . was not related to [patentee's] patented invention and may have been spent anyway"). In other words, there is no nexus between

any of the investments UPPAbaby made in these products and Baby Jogger's delay. *Aukerman*, 960 F.2d at 1033. There is likewise no evidence presented that any of the later versions of these same products differed in any material way or that any changes were influenced in any way by Baby Jogger's delay. There is no evidence that UPPAbaby would have done anything differently had Baby Jogger asserted its rights in the '869 Patent sooner.

There is also no evidence presented that UPPAbaby ever considered an alternative design. While UPPAbaby argues it had "several opportunities for redesign of future generations" if Baby Jogger had brought suit sooner (ECF 42 at 17), it does not take the position that it *would* have done so. *Cf. Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1375 (Fed. Cir. 2022) (finding no prejudice where [defendant] presented evidence that it *could* have altered [the accused product] in 2011 to not infringe the patent . . . but not evidence that it *would* have."). This is further exemplified by UPPAbaby's conduct following the filing of this litigation; it has offered no facts that it altered its conduct in any way or even considered doing so. *Meyers v. Asics*, 974 F.2d at 1308 (reversing summary judgment where the evidence "does not show that any of the defendants would have acted differently had [patentee] sued earlier."). Based on UPPAbaby's communications, a reasonable inference is that UPPAbaby acted with indifference as to whether Baby Jogger would file suit because it believed that the '869 Patent was not valid and that it did not infringe.[8] *See, e.g.*, *Gasser Chair*, 60 F.3d at 775 (finding investment was business decision where defendant believed patent was invalid). UPPAbaby's failure to respond to the invitation in Baby Jogger's last letter to "work[] together towards a resolution" further supports this conclusion. ECF 42 at 8.

UPPAbaby's reliance on *Scholle* and *Aspex* is once again misplaced. In *Scholle*, the accused infringer designed an alternative product in response to infringement allegations, provided

---

[8] ECF 42 at 4; RSMF ¶¶ 12.

copies of the re-designed product, and stated it would presume the new product did not infringe unless it heard back from the patentee. 133 F.3d at 1470. The costs at issue were those related to the development and manufacture of the new product. *Id*. at 1471. Here, UPPAbaby never developed an *alternative* product. In *Aspex*, the accused infringer testified that "given the newness of the products and [its] lack of investment in them, [it] would very likely have simply decided to stop selling the [accused products] ad pursued other business opportunities." 605 F.3d at 1311. Instead, the accused infringer relied on the patentee's delay and expanded the product line and sales grew. *Id*. at 1311-12. No such facts exist here. UPPAbaby admits that the "the Vista has been UPPAbaby's flagship stroller since 2006." ECF 42 at 13 n.2. And it had already introduced the 2015 version of the accused Vista and RumbleSeat products before any correspondence between the parties. SAF ¶ 27. UPPAbaby had already invested heavily in this product, and it makes no argument that it decided to expand the product line in reliance on Baby Jogger's delay. While sales may have increased over time, UPPAbaby fails to demonstrate a nexus with this alleged increase and any Baby Jogger conduct.

### 2.    *Lack of evidentiary or defense prejudice*

Evidentiary prejudice "may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Aukerman*, 960 F.2d at 1033. UPPAbaby fails to point to any specific witnesses or evidence that it believes are no longer available and necessary to support its defense. *Meyers v. Asics*, 974 F.2d at 1308 ("Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient."). UPPAbaby first argues that it may need discovery related to the 2008 tradeshow in an attempt to create a defense that Baby Jogger allegedly copied some aspect of its inventions from UPPAbaby. But UPPAbaby

does not argue that any specific piece of evidence is not available to it. Moreover, Baby Jogger did not accuse the 2008 version of the RumbleSeat product of infringement because it is not covered by the claims of the '869 Patent and thus is irrelevant. SAF ¶¶ 13, 18; Leonard Decl. ¶ 5 (Ex. 3).

UPPAbaby next argues that it may have had some vague claim for unfair business practices that it never asserted, based on discussions that occurred in 2015. RSMF ¶¶ 5, 14, 20. UPPAbaby argues that it is prejudiced because Baby Jogger currently lacks knowledge or information related to these discussions. ECF 42 at 19. But because UPPAbaby was involved in these discussions, it is unclear what evidence (if any) it would need from Baby Jogger that would not already be in its possession. And UPPAbaby's conclusory statement that Baby Jogger did not sue because of a possible claim by UPPAbaby of unfair business practice is completely unsupported. ECF 42 at 20. UPPAbaby repeats its false argument that Baby Jogger did not deny these allegations; as discussed above, Baby Jogger refuted UPPAbaby's claims of theft and unfair business practices. *See supra* Part II.B., IV.A.2. Accordingly, UPPAbaby has failed to provide undisputed facts that it suffered any prejudice as a result of its alleged reliance on any conduct of Baby Jogger.

In arguing that the parties' meager communications in 2015, bar Baby Jogger from enforcing rights now, all without adequate evidence of reliance or prejudice, UPPAbaby is in effect asserting a laches argument in other garb. This is no doubt because laches no longer applies to claims for patent infringement. *SCA Hygiene,* 580 U.S. at 345. Because UPPAbaby cannot establish the elements of its equitable estoppel defense, its Motion must be denied.

### D.    Equitable Factors Warrant Denial Of UPPAbaby's Motion

Courts must also consider whether the accused infringer "has engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor." *Aukerman*, 960 F.2d at 1033; *see also id*. at 1043-44. "Intentional copying of the plaintiff's product may so qualify." *Gasser Chair*, 60 F.3d at 775. UPPAbaby's Motion, while attempting to manufacture an

argument that Baby Jogger stole from it, fails to acknowledge the more reasonable interpretation of the facts: that UPPAbaby copied Baby Jogger's innovation and is willfully infringing the Asserted Patents. ECF 29, ¶¶ 1, 57-70. Prior to 2015, UPPAbaby had a very rudimentary seat attachment for a stroller, capable only of attaching to the stroller frame such that it positioned the second child close to and facing the back of a backward-facing first seat and reduced under-seat storage, and the seat was not reversible or interchangeable. ECF 29, ¶ 62. But then, in late 2015, UPPAbaby introduced a new version of its RumbleSeat product that was strikingly similar to what was disclosed in Baby Jogger's '869 Patent. This led Baby Jogger to notify UPPAbaby of the '869 Patent. SAF ¶ 8. Thus, discovery in this case will likely show that UPPAbaby copied Baby Jogger's invention, not the converse.

### E.    UPPAbaby's Equitable Estoppel Defense Is Limited To the '869 Patent

Even if UPPAbaby could establish its equitable estoppel defense with respect to the '869 Patent—which it cannot—its defense does not apply to the remaining four Asserted Patents as a matter of law. "[F]or claims that have not issued, there is no case or controversy and therefore 'the elements of equitable estoppel are not present.'" *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, 887 F.3d 1322, 1328 (Fed. Cir. 2018) (quoting *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1131 (Fed. Cir. 2013)); *Aukerman*, 960 F.2d at 1042 ("[i]t is clear . . . that for equitable estoppel the alleged infringer cannot be unaware . . . of the patentee and/or its patent."). At the time of the parties' communications in December 2015 and March 2016, only the '869 Patent had issued. SAF ¶¶ 2-6, 26. There can be no misleading conduct with respect to patents that had not issued and could not be asserted. *Meyers v. Asics*, 974 F.2d at 1309 (holding patentee "could not have communicated acquiescence, or threatened litigation" for patents issued after letters were sent).

UPPAbaby ignores this precedent, arguing that its defense should apply to all the Asserted Patents simply because they are related and because Baby Jogger alleged that UPPAbaby knew or

should have known of the other Asserted Patents. ECF 42 at 23; *but see* ECF 29, ¶¶ 101, 138, 177, 215. Whether UPPAbaby had knowledge of the other Asserted Patents is irrelevant to whether there was any conduct by Baby Jogger which led UPPAbaby to believe those patents would not be enforced against it. UPPAbaby could not have inferred that Baby Jogger would not assert patents that did not exist. UPPAbaby's Motion fails to establish its equitable estoppel defense with respect to the '869 Patent, and the defense has no application to the remaining Asserted Patents.

### F.    At A Minimum, Discovery Should Be Permitted To Address the Material Factual Disputes Raised In UPPAbaby's Motion

In addition to lacking merit, UPPAbaby's Motion is premature as necessary discovery has not occurred. "[W]hile summary judgment prior to any discovery may be appropriate where the facts truly are not in dispute . . . an evidentiary record generally is necessary for a summary judgment decision, [and] a motion for summary judgment is rarely considered before discovery." *Czerwienski v. Harvard Univ.*, 664 F. Supp. 3d 181, 191 (D. Mass. 2023) (internal quotation omitted). None of the cases cited by UPPAbaby granting summary judgment of equitable estoppel involved a case in which no discovery had been conducted. *See* ECF 42 at Part III.A. As a result, while UPPAbaby's Motion should be denied for failure to show it is entitled to judgment as a matter of law, if the Court takes a different view, discovery should be permitted to allow Baby Jogger to conduct discovery on the numerous disputed facts and conclusory statements in UPPAbaby's Motion. To that end, Baby Jogger has submitted a declaration pursuant to Fed. R. Civ. P. 56(d). Leonard Decl. ¶¶ 6-13.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Baby Jogger respectfully requests that the Court deny UPPAbaby's Motion for Summary Judgment of Equitable Estoppel.

Respectfully submitted,

Dated:  January 24, 2025

/s/ *Robert J. Leonard*
Wendy K. Venoit (BBO No. 568657)
Michael M. Filbin (BBO No. 705341)
**COZEN O'CONNOR**
200 State Street, Suite 1105
Boston, MA 02109
Telephone: (617) 849-5002
wvenoit@cozen.com
mfilbin@cozen.com

John W. Harbin (Admitted *pro hac vice*)
Georgia State Bar No. 324130
Gregory J. Carlin (Admitted *pro hac vice*)
Georgia State Bar No. 455865
Walter Hill Levie III (Admitted *pro hac vice*)
Georgia State Bar No. 415569
Robert J. Leonard (Admitted *pro hac vice*)
Georgia State Bar No. 303694
**MEUNIER CARLIN & CURFMAN LLC**
999 Peachtree Street N.E., Suite 1300
Atlanta, Georgia 30309
Telephone: (404) 645-7700
Facsimile: (404) 645-7707
jharbin@mcciplaw.com
gcarlin@mcciplaw.com
tlevie@mcciplaw.com
rleonard@mcciplaw.com

*Attorneys for Plaintiff Baby Jogger, LLC*

<u>CERTIFICATE OF SERVICE</u>

I certify that on January 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically sends email notification of such filing to registered participants.  Any other counsel of record will receive the foregoing via e-mail in PDF format.


<u>/s/ *Robert J. Leonard*</u>
Robert J. Leonard