# EXHIBIT I

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF MASSACHUSETTS

3

4      CIVIL ACTION NO. 1:24-CV-11582-ADB

5

6      BABY JOGGER, LLC,

7                      Plaintiff,

8      vs.

9      MONAHAN PRODUCTS, LLC, d/b/a UPPABABY,

10                     Defendants.

11

12

13         REMOTE DEPOSITION OF WILLIAM W. CLARK, PH.D.

14

15                     April 29, 2025

16

17

18

19

20

21

22     REPORTED BY:  Laura H. Nichols

23                     Certified Realtime Reporter,

24                     Registered Professional

25                     Reporter and Notary Public

William W. Clark , Ph.D.                April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

                                                    Page 2

 1                    A P P E A R A N C E S

 2

 3       FOR THE PLAINTIFF:

 4              Mr. Robert J. Leonard

 5              Attorney at Law

 6              Meunier Carlin & Curfman LLC

 7              999 Peachtree Street Northeast

 8              Suite 1300

 9              Atlanta, Georgia 30309

10              (404) 645-7700

11              rleonard@mcciplaw.com

12

13       FOR THE DEFENDANT, MONAHAN PRODUCTS, LLC,

14       d/b/a UPPABABY:

15              Ms. Andrea Reed

16              Mr. Craig Smith

17              Attorneys at Law

18              Lando & Anastasi, LLP

19              60 State Street

20              23rd Floor

21              Boston, Massachusetts 02109

22              (617) 395-7032

23              areed@lalaw.com

24              csmithlalaw.com

25

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 3

1                A P P E A R A N C E S   (Continuing)

2

3      OTHERS PRESENT:

4              Ms. Peggy Oldenburg, Concierge

5              Veritext Legal Solutions

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 4

1                  INDEX OF EXAMINATION

2

3                                              Page:

4      DEPONENT:  WILLIAM W. CLARK, PH.D.                 7

5      EXAMINATION BY MR. LEONARD                         7

6

7

8              INDEX OF PLAINTIFF'S EXHIBITS

9

10                                             Page:

11     Plaintiff's Exhibit 1                        15-11

12          Curriculum Vitae of William Walker

13     Clark, Ph.D.

14     Plaintiff's Exhibit 2                         27-9

15          Declaration of William Buddy Clark

16     concerning Claim Construction

17     Plaintiff's Exhibit 3                        37-23

18          U.S. Patent 8,955,869 B2

19     Plaintiff's Exhibit 4                        56-12

20          U.S. Patent 11,878,729 B2

21     Plaintiff's Exhibit 5                        65-18

22          Response to Office Action,

23     beginning with Bates Number BJvU-0001159

24     Plaintiff's Exhibit 6                        71-25

25          U.S. Patent 11,192,568 B2

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

1              INDEX OF PLAINTIFF'S EXHIBITS, CONTINUING

2

3                                                    Page:

4     Plaintiff's Exhibit 7                         84-11

5            Amendment and Response to Non-Final

6     Office Action, beginning with Bates Number

7     BJvU-0002219

8     Plaintiff's Exhibit 8                         88-10

9            U.S. Patent 11,505,231 B1

10    Plaintiff's Exhibit 9                         117-7

11           U.S. Patent 9.403,550 B2

12

13

14

15

16

17

18

19

20

21

22

23

24

25

William W. Clark , Ph.D.                April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 21

1    it.  I don't think I actually started engaging

2    until, I think, in March of this year.

3              Q.    When you say you were first

4    introduced to this case, can you kind of tell me

5    what you mean by that?

6              A.    Sure.  So Mr. Smith called me,

7    asked -- or, you know, explained the case, asked if

8    I would be available and interested to be an expert

9    witness.  And I said that I was intrigued, I would

10   be happy to follow up.

11             There was a discussion with -- a

12   later discussion, I think in November at some

13   point, about -- between Mr. Smith and some other

14   attorneys from other companies related to filing an

15   IPR that was associated with the patents that were

16   at issue.  And the question was -- or I think

17   the -- I was being considered to work as an expert

18   witness on that part of the case.  I was not chosen

19   to do that.

20             But later Mr. Smith called me again

21   and asked about specifically working with Monahan

22   on this aspect of the case, for them in particular.

23             Q.    So you said you first became real

24   engaged in this case in March, correct?

25             A.    Yeah.  I mean I think it was probably

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 22

```
 1    February when I started looking in more detail.

 2    But I think my engagement letter, my official, you

 3    know, start was either late February or early

 4    March.  I would have to look at the actual letter,

 5    but that is what I mean by engaged.

 6            Q.     Sure.  When did you really start

 7    working on the case as far as, you know, diving in,

 8    preparing your report, providing your opinions?

 9    Would that have been around the March time or would

10    that have been later?

11            A.     It would have been the March time,

12    although I would consider my initial reading of the

13    patents to be the beginning of that, which, again,

14    may have taken place prior to March.

15            Q.     Did you assist Monahan -- or if I say

16    UPPAbaby, that is just habit but really Monahan and

17    UPPAbaby are really the same party for purposes of

18    this.

19            A.     Sure.

20            Q.     Did you assist them in selecting the

21    terms that were going to be construed or disputed,

22    claim terms that were going to be construed for

23    this case?

24            A.     So I -- you are asking about

25    selecting the terms themselves that were being
```

William W. Clark , Ph.D.                April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 23

1    considered or being --
2            Q.      Right.
3            A.      Yeah, I did not -- I did not play a
4    role in the selection of the terms to be disputed,
5    I guess you would call it.
6            Q.      So the time you started working with
7    this case, the terms that were in dispute were
8    already chosen by UPPAbaby, correct?
9            A.      I don't know that.
10           Q.      I thought you just said you didn't
11   play a part in selecting those terms.
12           A.      Correct.
13           Q.      Okay.  So I -- fair enough.  When you
14   first saw the terms that were chosen for
15   construction, did you have any difference of
16   opinion on whether certain claim terms required
17   construction?
18           A.      Well, when you say difference of
19   opinion -- well, I guess I -- what are you asking
20   specifically?  Are you saying did I think other
21   terms should be used or did I think those terms
22   shouldn't be considered?  What do you mean?
23           Q.      Well, so you didn't play a role in
24   selecting the terms that are in dispute currently,
25   correct?

William W. Clark , Ph.D.                                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 24

1        A.      Correct.

2        Q.      So I guess my question is, did you

3    have any difference of opinion with respect to

4    those terms?  Did you simply agree that all of

5    those terms required construction?

6        A.      Yeah, I did.  I didn't -- none of the

7    terms struck me as odd choices because I think in

8    reading the claims, they require -- it is not

9    obvious from reading -- just reading the claims

10   what those terms mean.  So they made sense to me to

11   dig in deeper.

12       Q.      Did you assist UPPAbaby in developing

13   the proposed constructions for those terms?

14       A.      Yes.

15       Q.      So you were part of the process in

16   saying -- in creating UPPAbaby's position on what

17   those claim terms meant?

18       A.      Yeah.  That is really -- our

19   discussions revolved around, you know, determining

20   what those claim terms meant and, you know, whether

21   I agreed with those -- with the definitions that

22   were proposed.

23       Q.      But I guess my question is, you

24   agreed -- you said you agreed with those proposed

25   constructions.  But were you part of the process in

William W. Clark , Ph.D.                  April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 25

1    selecting those proposed constructions, or had they

2    already been chosen and you reviewed them and

3    agreed?

4         A.    When -- so I don't know that I ever

5    provided -- I will say, you know, it was a volley

6    process, a back and forth process.   And I think

7    they served first with the terms and then I

8    considered them, we discussed them and settled on

9    what is used now.

10        Q.    When they first volleyed the terms

11   over, did you provide any edits, or were those the

12   ones that were ultimately selected?   Were there any

13   changes made?

14        A.    On the actual constructions, I don't

15   recall if there were edits.   There may have been

16   minor edits.   To be honest, I don't recall exactly.

17        Q.    All right.   So you prepared a

18   declaration of your opinions on issue of claim

19   construction in this case, correct?

20        A.    I prepared a declaration, yes.

21        Q.    Okay.   And I am likely to refer to it

22   as a report because that is just a habit when

23   speaking to an expert.

24        A.    That is okay.

25        Q.    But I guess it is technically a

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

1           A.      Yes.

2           Q.      So you have not proposed a

3    construction for those terms?

4           A.      Correct.

5           Q.      At Paragraph 29, we spoke about this

6    a bit earlier, you say you agree with the

7    definitions put forth by UPPAbaby in its claim

8    construction brief.  And we talked about how the

9    claim terms had already been chosen at the time you

10   were engaged in this case, correct?

11          A.      Yes.

12          Q.      And you don't recall specifically if

13   there were any edits to the constructions that were

14   chosen by UPPAbaby, correct?  You reviewed them,

15   but you don't recall if any edits were made?

16          A.      Correct.

17          Q.      Okay.  All right.  So if we go to the

18   first claim term, disputed claim term, the first

19   claim term you offered an opinion on is "connector

20   portion," correct?

21          A.      Yes.

22          Q.      And you adopted UPPAbaby's

23   construction for this claim term, correct?

24          A.      Yes.

25          Q.      And that proposed construction is:

William W. Clark , Ph.D.                              April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 36

1    Male mating element that attaches by insertion into

2    a corresponding part.

3                    Correct?

4          A.      Yes.

5          Q.      You state that:  "Connector portion"

6    is not a term of art with an ordinary meaning.

7                    Can you explain to me what you mean

8    by that?  And this is at Paragraph 33 of your

9    declaration.

10         A.      Sure.  In engineering, there are lots

11   of terms that are used that have come to be known,

12   you know, to mean certain things.  I can talk about

13   bolts and nuts, screws, and just about all

14   engineers would know what those mean.

15                   "Connector portion" is not one of

16   those terms.  Say if you took a group of engineers,

17   no one would immediately identify what that means.

18         Q.      What about the term "connector," is

19   that an ambiguous term to you?

20         A.      I think it is not ambiguous in the

21   sense that it means something connects to something

22   else, but it is ambiguous in terms of how that is

23   done.

24         Q.      And at Paragraph 31, you note that

25   this term, claim -- or this term "connector

Page 37

1     portion" is used throughout several claims.  I

2     won't state them because there are several of them.

3                   But would you agree that the use of

4     this term is used consistently throughout these

5     claims?  There's no different use of the term?

6                   MR. SMITH:  Objection to form.

7          A.     I guess I am -- are you reading

8     something I wrote?  I am trying to understand what

9     you are asking.

10         Q.     (BY MR. LEONARD:)  I will restate the

11    question.

12                  So is the term "connector portion"

13    used consistently throughout each of the claims of

14    the asserted patents?

15                  MR. SMITH:  Objection to form.

16         A.     So I guess I am not clear on what you

17    mean by "consistently."  I mean it is used in many

18    of the claims, so I don't know how to answer that

19    beyond just saying what I said.

20         Q.     (BY MR. LEONARD:)  Okay.  Why don't

21    we start with this.  I am going to put up what has

22    been premarked as Plaintiff's Exhibit 3.

23                  (Plaintiff's Exhibit 3 was marked for

24                  identification.)

25         Q.     (BY MR. LEONARD:)  And this is going

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 38

1      to be U.S. Patent Number 8,955,869, which I will
2      sometimes refer to as the '869 Patent.
3                    Mr. Clark, let me know when you have
4      had a chance to review the document.
5              A.     Yes, I can see it.
6              Q.     Okay.  And do you recognize this
7      document?
8              A.     Yes.
9              Q.     And what is it?
10             A.     It is one of the -- well, it is the
11     '869 Patent, which is one of the patents at issue
12     in this case.
13             Q.     Okay.  And you reviewed and relied on
14     this patent in preparing your declaration, correct?
15             A.     Yes.
16             Q.     Okay.  If we look at Claim 1, which
17     is at Column 10 of the '869 Patent, there's two
18     uses of the claim term "connector portion."  This
19     at Column 10, Lines 23 through 34.  So it states:
20     A separate left attachment portion wherein the left
21     attachment portion comprises a connector portion
22     capable of removably connecting to a stroller frame
23     adjacent a left front wheel of the stroller.
24                    And then it goes on with similar
25     language regarding the right attachment portion.

1    Do you see that?

2              A.      Yes.

3              Q.      You don't cite this language in your

4    declaration, correct?

5              A.      I don't think I -- this is one of the

6    claims that I used as an example.

7              Q.      Okay.   Does Claim 1 of the '869

8    Patent use the phrase "male mating elements"?

9              A.      No.

10             Q.      Does it use the phrase "attaches by

11   insertion into a corresponding part"?

12             A.      No.

13             Q.      So none of that language is present

14   in Independent Claim 1 of the '869 Patent, correct?

15             A.      Correct.

16             Q.      At Paragraph 34 of your declaration,

17   you do reference Independent Claim 6 of the '869

18   Patent, correct?

19             A.      I reference Claim 6, yes.

20             Q.      And would you agree that the language

21   of Independent Claim 6 with respect to the claim

22   term "connector portion" is similar to the language

23   in Claim 1?

24             A.      Yes, I think it is -- I would agree

25   with that.

William W. Clark , Ph.D.                          April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 40

1          Q.     Okay.  Does the language of Claim 6
2     of the '869 Patent use the phrase "male mating
3     element"?
4          A.     No.
5          Q.     Does it use the phrase "attaches by
6     insertion into a corresponding part"?
7          A.     No.
8          Q.     Are you aware of any claim of any of
9     these asserted patents that uses the phrase "male
10    mating element"?
11         A.     So I don't think the terms "male
12    mating element" show up.  But as stated in the
13    report, there is language that suggests that a male
14    mating element has to be part of the connector
15    portion.
16         Q.     Okay.  Are you aware of any claim of
17    any of the asserted patents that uses the phrase
18    "attaches by insertion into a corresponding part"?
19         A.     I don't think those specific terms
20    show up in the claims.  But as I stated before,
21    there are claims and figures in which -- that
22    suggest that that is what a connector portion does.
23         Q.     All right.  Can you explain your
24    basis for why the connector portion would
25    require -- I believe that is what you said, but

William W. Clark , Ph.D.                      April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 43

1           A.      I don't know about the legalities of
2      this, but it -- generally speaking, it seems that
3      there's -- it adds additional information.  I will
4      put it that way.
5           Q.      (BY MR. LEONARD:)  Okay.  So in
6      Claim 7 -- and you reference this in one of your
7      previous answers that it states the stroller
8      Claim 6 where the attachment frame members comprise
9      a slot for removably receiving the connector
10     portion of the seat attachment portion, correct?
11          A.      Are you asking is that what it says?
12          Q.      Yes.
13          A.      Yes.
14          Q.      Okay.  And so you stated that because
15     Claim 7 is including a slot for removably receiving
16     the connector portion, I believe it was your
17     opinion that the connector portion therefore must
18     have something that could be inserted into that
19     slot, correct?
20          A.      Correct.
21          Q.      Okay.  So for purposes of Claim 7,
22     the connector portion would have to be something
23     that could be inserted into the slot, correct?
24          A.      Yes.
25          Q.      Now, the slot for removably receiving

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 44

1      the connector portion is the limitation that was
2      added to Claim 7, correct?
3              A.      Yeah, I think that is true.
4              Q.      So there's no limitation of a slot in
5      the attachment frame member in Claim 6, is there?
6              A.      Well, it is vague.  I mean I can't
7      tell what connector portion means just by reading
8      Claim 6.
9              Q.      Right.  My question is, is there a
10     limitation in Claim 6 of an attachment frame member
11     comprising a slot?
12             A.      No.  I mean if I'm an engineer
13     reading that claim and I am trying to determine
14     whether the device I just built, you know,
15     infringes on that claim, I really can't tell.
16             Q.      Okay.  If we look at the language of
17     Claim 6, is the word "slot" present in the language
18     of Claim 6?
19             A.      No.
20             Q.      How about Claim 1, in the claim
21     language, is the word "slot" present in the
22     language of Claim 1?
23             A.      Not that I recall.  I don't have it
24     in front of me, but I don't think so.
25             Q.      Okay.  So if the slot limitation is

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 45

1    only present in these dependent claims, it sounds

2    like you are saying that there must also be a slot

3    in Claim 6 and Claim 1.  Is that right?

4             A.      No.

5                     MR. SMITH:  Objection to form.

6             Q.      (BY MR. LEONARD:)  So it is your

7    opinion that Claim 1 and Claim 6 do not require a

8    slot?

9             A.      I mean I'm not sure what you mean by

10   "require."  They are what they are.  I can't change

11   what they are.

12            Q.      Okay.  We just went through the claim

13   language, right, and the word "slot" is not present

14   in Claim 1 and in Claim 6?

15            A.      Correct.

16            Q.      Okay.  And if it were, if there were

17   a slot in Claim 6, then Claim 7 would be redundant,

18   wouldn't it?

19            A.      I haven't really thought about that.

20   I'm not sure.

21            Q.      Well, sorry.  Did you have anything

22   else to say?  I apologize.

23            A.      No.

24            Q.      Okay.  We talked a little bit earlier

25   about how Claim 7 adds an additional limitation and

William W. Clark , Ph.D.                          April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 46

1    that that additional limitation is the slot,

2    correct?

3              A.      Correct.

4              Q.      So if that slot was present in

5    Claim 6, then there would be no reason -- there

6    would be nothing left for Claim 7 to add because

7    that additional limitation would be present in

8    Claim 6?

9              A.      Well, I don't think I want to say

10   that right now because maybe Claim 7 adds more that

11   would still make it relevant.  I mean I am not

12   prepared to answer that.  That is not something I

13   really considered.

14             Q.      Okay.  But I mean looking at Claim 7

15   at Paragraph 35 of your report, is there anything

16   additional that it adds that you can tell?

17             A.      So I don't -- I don't think that it

18   would add or it does add anything else.  But I

19   think that is a -- you know, the main point in my

20   process was it was a piece of information that

21   helped define what this thing, connector portion,

22   is.  So I will stop there.

23             Q.      Okay.  Now, so for purposes of

24   Claim 7 -- you stated this before -- that because

25   it has a slot, the connector portion must have

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 50

 1    must appear in Claim 6 or Claim 1 in order for the

 2    connector portion to be a male mating element.

 3              And I don't think that is true.

 4         Q.    Okay.  So if we had a male mating

 5    element, I mean how would it connect to the frame?

 6    Because that is what is required by the claim

 7    language, isn't it?

 8              MR. SMITH:  Objection to form.

 9         A.    Well, that wouldn't require anyone to

10    draft that language into the claim.

11         Q.    (BY MR. LEONARD:)  Draft what

12    language?

13         A.    A slot.

14         Q.    Okay.  You mentioned that there's no

15    figures that have anything else other than a male

16    mating element, correct?

17         A.    As I recall, the figures that refer

18    to connector portions are all male mating elements.

19         Q.    Okay.  But if you look at Figure 8 as

20    well as Figure 9A, 9B, 9C, 9D, 9E and 9F, do those

21    illustrate a male mating element or a slot?

22         A.    You said all of figures?  So there's

23    eight in 8A.

24         Q.    Figure 8 as well as 9A through 9F.

25         A.    Well, that detail is obscured in

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 51

1    those figures.  You know, according to what they
2    have written earlier, I think those elements exist
3    but they just don't appear in detail in those
4    figures.  And so, no, I can't say they exist or
5    they don't exist.  They are just not what those
6    figures are for, as far as I can tell.
7            Q.    But you would agree that those
8    figures are embodiments of the claim invention,
9    correct?
10           MR. SMITH:  Objection, form.
11           A.    According to the way I read the
12   patent, they are embodiments of the invention, some
13   aspect of the invention.
14           Q.    (BY MR. LEONARD:)  All right.  At
15   Paragraph 36 of your declaration, you say that:  If
16   the connector portion was not a male mating element
17   that attaches by inserting into a slot and
18   removably -- the "slot" and "removably receiving"
19   language would not make sense.
20               Do you see that?  This is
21   Paragraph 36 of your declaration.
22           A.    Yes.
23           Q.    Can you explain what you mean by
24   that?
25           A.    So Claim 7 describes a slot for

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 52

1      receiving the connector portion, which in my

2      opinion assumes that the connector portion goes

3      into the slot, which would make it a male member.

4                   If it didn't do that, then, again --

5      yeah, then that doesn't make sense to me.  Slots

6      are female members.  They receive male members.

7             Q.     I think what I don't quite understand

8      is you referenced "removably receiving" and that

9      that language would not make sense.  Can you

10     explain why the "removably receiving" language

11     would not make sense if it was not a male mating

12     element?

13            A.     I am trying to think of, you know,

14     the rationale for that.  So this connector portion

15     has to do with, you know, attaching an accessory

16     and removing that accessory.  So it is -- the most

17     sensible way to understand that is there's a slot

18     that receives a male member and that part can be

19     assembled and disassembled.

20                   If it is something other than that, I

21     can't understand how you would removably or, you

22     know, be able to assemble and disassemble something

23     other than a male member going into a slot.

24            Q.     Okay.  So is it the receiving

25     language that is important, then, I guess?  At

William W. Clark , Ph.D.                                  April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 53

1    Paragraph 36 of your declaration, you go on to say

2    that:   The term "receiving" already indicates that

3    the slot is a receptacle that holds and contains at

4    least part of the connector portion.

5                      So is it that receiving language that

6    is important?

7          A.     It is the combination of the slot and

8    receiving because the slot is meant to receive the

9    connector portion.

10         Q.     Okay.  Now, if you could just look

11   back at Claim 1 for me, Claim 1 doesn't use the

12   language "removably receiving," does it?

13         A.     No.

14         Q.     Instead it uses the language

15   "connector portion capable of removably connecting

16   to a stroller frame," correct?

17         A.     Yes.

18         Q.     And Claim 6 uses that same language,

19   "removably connecting," correct?

20         A.     Yes.

21         Q.     And Independent Claim 9, which is

22   also listed at Paragraph 37 of your declaration,

23   also uses the "removably connecting" language,

24   correct?

25         A.     Yes.

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 54

1          Q.      And if you look at Independent
2     Claim 24, it also uses the language "connector
3     portion capable of removably connecting to a
4     stroller frame," correct?
5          A.      Yes.
6          Q.      Okay.  So none of the independent
7     claims use the "removably receiving" language that
8     you reference in Paragraph 36, correct?
9          A.      I don't know if that is true.  But I
10    would have to reread them in detail.  I mean --
11         Q.      Well, if you want to look at
12    Claim 24, it is on Column 26 of the '869 Patent.
13    If you want to take some time to read it, let me
14    know.
15         A.      So that is correct.  I don't see the
16    word "receiving" in that claim.
17              MR. SMITH:  Robert, when you get to a
18    natural breaking point, I could use a bathroom
19    break.
20              MR. LEONARD:  Now is a good time.
21    Why don't we go off the record.
22              MR. SMITH:  Okay.
23              MR. LEONARD:  How about five, ten
24    minutes?  Good for everybody?
25              MR. SMITH:  Yeah, that is fine by me.

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 55

1        A.      Me too.  Thank you.

2                MR. LEONARD:  All right.

3                (Whereupon, a break was had from

4                10:49 a.m. until 11:03 a.m. EST)

5        Q.      (BY MR. LEONARD:)  Before we leave

6    the '869 Patent, is the term "male mating element"

7    used in the specification of the '869 Patent at

8    all?

9        A.      I'm sorry.  You asked if it is used

10   in the specification?

11       Q.      Correct.

12       A.      Not that I know of.

13       Q.      How about the phrase "attaches by

14   insertion into a corresponding part," is that in

15   the specification of the '869 Patent anywhere?

16       A.      I don't think so.  Not in words.  I

17   mean it is in figures.

18       Q.      Which figures specifically are you

19   referencing?

20       A.      Let me -- yeah, that might not be the

21   '869 Patent.  I think it is in other patents in

22   that group.

23       Q.      There's no figures in the '869 Patent

24   that represent that language, the "attaches by

25   insertion into a corresponding part"?

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 65

1            A.      (Nodding.)

2            Q.      Okay.  Do the specifications of any

3     of the asserted patents use the phrase "male mating

4     elements"?

5            A.      Not to my knowledge.  I don't think

6     they do.

7            Q.      Okay.  Do the specifications of any

8     of the asserted patents --

9                    (Off-the-record discussion.)

10           Q.      (BY MR. LEONARD:)  Do the

11    specifications of any of the asserted patents use

12    the phrase "attaches by insertion into a

13    corresponding part"?

14           A.      As I recall, the specifications don't

15    use that language but the figures do.

16           Q.      All right.  The next exhibit is going

17    to be -- it's premarked as Plaintiff's Exhibit 5.

18                    (Plaintiff's Exhibit 5 was marked for

19                    identification.)

20           Q.      (BY MR. LEONARD:)  And this is

21    excerpts from the prosecution history of U.S.

22    Patent Application Number 12-631,375, which I will

23    sometimes refer to as the '375 application

24    prosecution history, and it has Bates Numbers

25    EJvU-0001159 through 1170.

William W. Clark , Ph.D.                                April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 73

1          Q.     Okay.  And for this claim term, you

2     adopted UPPAbaby's proposed construction, correct?

3          A.     Yes, I did.

4          Q.     And that proposed construction is

5     rotatively coupled at a common pivot point,

6     correct?

7          A.     Yes.

8          Q.     All right.  If we look at Claim 1,

9     which contains the Cheng's claim language, it is

10    listed at Paragraph 58 of your declaration, also

11    Column 17 of the '568 Patent.

12               And the relevant language using the

13    claim term states:  A first back wheel support

14    frame rotated with respect to the first upper tube

15    support frame and a second back wheel support frame

16    rotated with respect to the second upper tube

17    support frame.

18               Correct?  That is the claim language

19    at issue?

20          A.     Yes.

21          Q.     Okay.  So the claim language is

22    describing one component, a first back wheel

23    support frame being rotated with respect to another

24    component, the first upper tube support frame,

25    correct?

William W. Clark , Ph.D.                          April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 74

1        A.      I'm sorry.   Could you say that again?

2        Q.      Sure.   The claim language describing

3    one component here, the back wheel support frame

4    being rotated with respect to another component,

5    the upper tube support frame, correct?

6        A.      Yes.

7        Q.      Okay.   Now, is the phrase "common

8    pivot point" used in the claim language or in

9    Claim 1 of the '568 Patent?

10       A.      No.

11       Q.      Does Claim 1 of the '568 Patent use

12   the phrase "rotatively coupled"?

13       A.      I don't think so.   Yeah, I would say

14   no.

15       Q.      Are you aware of any claim in any of

16   the asserted patents that uses this language?

17              MR. SMITH:   Objection to form.

18       A.      Any claim in this patent?

19       Q.      (BY MR. LEONARD:)   In any of the

20   asserted patents.

21              MR. SMITH:   Same objection.

22       A.      I don't recall seeing it explicitly

23   written like this.

24       Q.      (BY MR. LEONARD:)   Okay.   Is the

25   phrase "common pivot point" used in the

William W. Clark , Ph.D.                          April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 75

1    specification of the '568 Patent at all?

2              A.    Is the phrase what?

3              Q.    Common pivot point?

4              A.    Not that I recall.

5              Q.    All right.  At Paragraph 59 of your

6    declaration you state that:  It is typical for the

7    upper tube support frames of strollers and the back

8    support frames to be rotated with respect to one

9    another and that those elements would share a

10   common pivot point.

11                   Do you see that?

12             A.    Yes.

13             Q.    Is it a requirement that the upper

14   tube support frame and the back support frames

15   would have to have a common pivot point?

16                   MR. SMITH:  Objection to form.

17             A.    A requirement for what?

18             Q.    (BY MR. LEONARD:)  Well, you say it

19   is typical that they would have a common pivot

20   point, correct?

21             A.    Well, for strollers in general.  That

22   is what that sentence is referring to.

23             Q.    Why is it typical that they have a

24   common pivot point?

25             A.    Well, otherwise they wouldn't be

William W. Clark , Ph.D.                                April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 79

1          Q.     Sure.  And you reference Figure 8A,

2     which is at Paragraph 60 of your declaration.  That

3     is Figure 8A of the '568 Patent, correct?

4          A.     Yes.

5          Q.     So my question is, what limits it to

6     just that embodiment that is shown in 8A where they

7     have a common pivot point?

8          A.     Well, as far as I recall, I think

9     that is the only claim this shows up in.  This

10    term, "rotated with respect to," is only in Claim 1

11    of that patent, the '568 Patent.  And that -- in

12    the description or the specification, those

13    elements of the claim are described.  And so

14    there's no other -- at least in the patents, as far

15    as I recall, I don't think there's any other

16    information to describe what "rotated with respect

17    to" means.

18               So I have no other basis but to say

19    they are like what is shown in that figure.

20         Q.     Okay.  So there's nothing else in the

21    specification other than the figure that you can

22    rely on with respect to your opinion that the parts

23    must be coupled to one another or share a common

24    pivot point?

25               MR. SMITH:  Objection to form.

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 80

1          A.      I don't recall seeing anything else
2     in the patents that talked about "rotating with
3     respect to."  I mean there's talk of coupling, but
4     I think specifically that phrase, I don't recall
5     seeing it elsewhere.
6          Q.      (BY MR. LEONARD:)  Is there any
7     requirement in the claims of the specification that
8     the upper tube support frame have a pivot point at
9     all?
10               MR. SMITH:  Objection to form.
11         A.      Is there a requirement -- I'm sorry.
12    I talked over someone.
13               MR. SMITH:  I just objected to form.
14         A.      Okay.  The question was is there a
15    requirement -- I'm sorry.  Say it again.
16         Q.      (BY MR. LEONARD:)  Sure.  Is there
17    any requirement that the upper tube support frame
18    have a pivot point at all?
19               MR. SMITH:  Same objection.
20         A.      Requirement by whom?
21         Q.      (BY MR. LEONARD:)  By the
22    specification or the claims.
23         A.      I think there is -- well, I will say
24    there's a description of that being the case in the
25    specification and the figure.

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 81

```
1          Q.     When you say "in the specification,"
2    can you point me to where it says that, or do you
3    recall, or are you referring to just the figure?
4          A.     I would have to search.  But as I
5    recall, I mean without having to dig in and find it
6    in the specification right now, it is clear that
7    that back wheel member rotates with respect to the
8    upper frame because at some point in a folded
9    configuration, the handle and the wheel come
10   together.  So the only way that I can interpret
11   that happening is if those two points, that there's
12   a rotation at that joint.  There's a revolute joint
13   right there.
14               THE REPORTER:  There's a what joint?
15         A.     R-E-V-O-L-U-T-E.  It is a kinematics
16   term.  Sorry.
17         Q.     (BY MR. LEONARD:)  At Paragraph 63 of
18   your declaration you state that:  The specification
19   of the '568 Patent describes only rotational
20   coupling between elements at a common pivot point.
21               Do you see that?
22         A.     I'm sorry.  Which paragraph?
23         Q.     Paragraph 63.
24         A.     Yes.
25         Q.     Okay.  There's no citations in this
```

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 82

1      paragraph.  I am just wondering what you can point

2      to to support that statement.

3              A.     I must not have been more thorough

4      and pointed to a place in the spec.  I mean we can

5      look and I could maybe try to find it, but I don't

6      recall specifically off the top of my head.

7              Q.     Okay.  If we go back and take a quick

8      look at the '568 Patent, if you want to pull that

9      back up, specifically go to Column 9 starting at

10     around Line 39 or 40.

11             A.     Okay.

12             Q.     And it states that:  In one example,

13     each folding mechanism 81e can be coupled either

14     directly or indirectly to the corresponding front

15     wheel support frame 81a, back wheel support frame

16     81b and upper tube support frame 81c on the

17     corresponding side (left and right) of the

18     stroller 80.

19                    Do you see that?

20             A.     Yes.

21             Q.     So doesn't the language that these

22     components can be coupled either directly or

23     indirectly contradict the common pivot point

24     position that you have taken?

25                    MR. SMITH:  Objection to form.

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 91

1          Q.     And so this is Claim 1 of the '231
2    Patent.  And would you agree with me that the
3    language -- and feel free to take a look at it --
4    of Claim 1 of the '729 Patent uses similar
5    language?
6          A.     I mean it is similar, yes.
7          Q.     Okay.  Is the phrase "lateral frame
8    portion" found in the language of Claim 1 of the
9    '231 or the '729 Patents?
10         A.     I think that appears.
11         Q.     Are you aware of any claim of any of
12   the asserted patents that uses the phrase "lateral
13   frame portion"?
14         A.     I don't think so.  Isn't that the
15   point of claim construction disputes, is to resolve
16   these sorts of questions?
17         Q.     What about in the specification of
18   the '231 or '729 Patent, is the phrase "lateral
19   frame portion" found in the specifications?
20         A.     What was the question again?
21         Q.     Is the phrase "lateral frame portion"
22   used in the specifications of the '231 or the '729
23   Patent?
24         A.     I don't think so.
25         Q.     Okay.  If we look at Claim 14 of the

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 99

1      is my interpretation.
2             Q.    Okay.  For sake of argument, there's
3      no language in these claims that the connector
4      portions have to be in contact with the front
5      wheels, correct?
6                    MR. SMITH:  Objection to form.
7             A.    I don't recall language in the claims
8      that require that.  But again, it is -- there is
9      ambiguity.  So -- but I don't -- I don't recall
10     seeing that.
11            Q.    (BY MR. LEONARD:)  Okay.  Is there
12     language in the claims of the '869 Patent that the
13     stroller frame must be in contact with the front
14     wheel?
15                   MR. SMITH:  Objection to form.
16            A.    It depends on the interpretation of
17     adjacent.  And certainly the frame is shown to be
18     in contact with the wheels.
19            Q.    (BY MR. LEONARD:)  Okay.  But you
20     would agree with me that the connector portions are
21     not in contact with the wheels, correct?
22                   MR. SMITH:  Objection to form.
23            A.    I think, as I interpret this, the
24     connector portion and what is shown is not in
25     contact with the wheels.

William W. Clark , Ph.D.                                  April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 113

1          Q.     And how is this instance describing

2     no longer having contact with?

3          A.     So the point that is referred to is

4     removed from another point being referred to.  So

5     they are not in direct contact.

6          Q.     So it is further away?

7          A.     Well, it is -- it doesn't have

8     contact.  So I guess the difference between having

9     contact -- if we define that in removing contact,

10    it is further away, then yes, it is further away.

11         Q.     All right.  If we could switch over

12    to Plaintiff's Exhibit 5, this was the excerpts of

13    the prosecution history of the '375 applications.

14    We reference it in Paragraph 115 -- starting at 114

15    of your declaration.

16         A.     Okay.

17         Q.     All right.  You cite to a portion of

18    this prosecution history, and you conclude that:

19    It is clear that applicant rejected the idea that

20    an indirect connection or mere proximity amounted

21    to adjacency.

22                Do you see that?

23         A.     Which paragraph is that?

24         Q.     That is the last sentence of

25    Paragraph 115 of your declaration.

William W. Clark , Ph.D.                        April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 114

1          A.     Oh, right.  Okay.

2          Q.     Can you just explain to me how you

3     reached that conclusion based on the Plaintiff's

4     Exhibit 5?

5          A.     So what am I asked to explain?

6          Q.     So the final sentence of

7     Paragraph 115 you state:  It is clear that

8     applicant rejected the idea that an indirect

9     connection or mere proximity amounted to adjacency.

10          I am just curious how you reached

11     that conclusion.

12          A.     Okay.  So in defending their case,

13     Baby Jogger argued to the Patent Office that there

14     are points -- and let me look.  So in Figure 5.

15     Let's see if I can find that.  Well, okay.  I don't

16     know -- yeah, the figure, I guess, doesn't show up

17     in the -- in the '375 document.

18          But the argument essentially, as I

19     recall or understand, what Baby Jogger was saying

20     is that there's a point that supports the seat that

21     is not adjacent to a wheel, I think, because it is

22     separated by some distance and it is not directly

23     connected.

24          In fact, it is an indirect

25     connection.  It goes through linkages, which

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 115

1    according to them implied this does not mean

2    adjacent.

3         Q.    Okay.  I guess my question is where

4    in Plaintiff's Exhibit 5 did Baby Jogger say that?

5         A.    Oh, I see what you are asking.

6               (Pause.)

7         A.    Yeah, I am trying to find it in the

8    document.  I am looking at the reference I used.

9               (Pause.)

10        A.    I'm not seeing it right now.

11        Q.    (BY MR. LEONARD:)  Okay.  So I mean

12   sitting here right now, you are just not able to

13   find where Baby Jogger stated that, correct?

14        A.    So I'm not sure that is the right

15   document.

16        Q.    At Paragraph 115 of your declaration,

17   you cite to Bates Number BJvU-0001169, correct?

18        A.    Yeah.  Okay.  So it has got to be on

19   this page somewhere.  Oh, okay.  Yeah, it is the

20   bottom of the next-to-the-last paragraph.

21        Q.    Okay.  And what language are you

22   referring to?

23        A.    I'm sorry.  What what?

24        Q.    What language are you referring to?

25        A.    "Even so, the seat support elements

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 116

1      are not connected to the frame adjacent to the
2      front wheels.  They are connected to a pivoting
3      frame member, 41."
4              Q.      Okay.  So based on that language, you
5      are able to conclude that it is clear that
6      applicant rejected the idea that an indirect
7      connection or a mere proximity amounted to
8      adjacency?
9              A.      Well, that is one piece of evidence
10     among others.  You know, this is a puzzle you have
11     to put together when these things are written so
12     ambiguously.  So this is one piece of that puzzle.
13             Q.      Okay.  Is there anything else in
14     Plaintiff's Exhibit 5 that supports that statement?
15     By "that statement," I am referring to the
16     statement in Paragraph 115 of your declaration.
17             A.      For the -- you are talking about for
18     the prosecution history of the '375 Patent?
19             Q.      The '375 application.
20             A.      I'm sorry.
21             Q.      Yeah, which is Plaintiff's Exhibit 5.
22             A.      I think that -- it is those
23     paragraphs.  I'll put it that way.  I am pretty
24     sure.  And it is that point on their mechanism that
25     they are referring to.  I don't know that -- I

Page 117

1    don't think it occurs elsewhere in that

2    prosecution.

3                Q.      All right.  Let's move on.

4                MR. LEONARD:  I am going to pull up

5    what I believe is the final exhibit, Plaintiff's

6    Exhibit 9.

7                     (Plaintiff's Exhibit 9 was marked for

8                     identification.)

9                MR. LEONARD:  Which is U.S. Patent

10   Number 9,403,550, or I will refer to it as the '550

11   Patent.

12               A.      Okay.  I see it.

13               Q.      (BY MR. LEONARD:)  Okay.  Do you

14   recognize this document?

15               A.      Yes.

16               Q.      Okay.  And what is it?

17               A.      It is the '550 Patent, which is one

18   of the patents asserted in this case.

19               Q.      Okay.  And you reviewed and relied on

20   this patent in preparing your declaration, correct?

21               A.      Yes.

22               Q.      All right.  So the next disputed

23   claim term for which you offer an opinion on is

24   "closer" or "closer to," which is found in Claims 1

25   and 7 in the '550 Patent, correct?

Page 118

1            A.      Give me a second.

2            Q.      Can you also make that same statement

3       in Paragraph 121 of your --

4            A.      Yes.  Yeah, just checking it.  It is

5       correct.

6            Q.      Okay.  And for this claim term, you

7       did not offer a proposed construction, correct?

8            A.      That is correct.

9            Q.      All right.  Well, you have adopted

10      UPPAbaby's position that this claim term is

11      indefinite, correct?

12           A.      Yes.

13           Q.      Okay.  And what is your general

14      understanding of what it means for a claim term to

15      be indefinite?

16           A.      It means -- to me it means that I

17      can't understand how to interpret that term in the

18      claims so that I could decide whether the device

19      that I am making infringes upon that claim and I

20      can't find enough evidence to support any

21      particular definition that would give me, you know,

22      something to go on to say yes, I am infringing or

23      no, I am not.

24                   So without any way to reduce the

25      uncertainty around that term, it remains indefinite

Page 119

1    to me.

2              Q.    Okay.  Would you agree with me that

3    Claim 1 and Claim 7 of the '550 Patent are similar?

4              A.    I am pretty -- I believe they are.  I

5    don't know that I -- yeah, 7 is in the following

6    paragraph.  And I think they are similar.

7              Q.    Okay.  And I will take it in part

8    since the claim language is long.  If you look at

9    the first two uses of the term "closer to" -- and

10   this is in Claim 1 of the '550 Patent -- the claim

11   language states:  A first seat coupled to the

12   stroller frame at a first vertical position of the

13   stroller frame closer to a handle of the stroller

14   and configured to hold a first child in the

15   stroller.

16              Do you see that?

17              A.    Yes.

18              Q.    Okay.  And then it goes on to say:  A

19   second stroller seat attachment coupled to the

20   stroller frame at a second vertical position

21   substantially below the first vertical position and

22   closer to the front wheels.

23              Do you see that?

24              A.    Yes.

25              Q.    Okay.  So at Paragraph 125 of your

Page 120

1    declaration, you state that "closer" is a relative

2    term, correct?

3              A.    Yes.

4              Q.    Can you just explain that for me?

5              A.    So if I say something is closer, I

6    have to -- there has to be a reference in that

7    statement.  So one thing is closer to a thing than

8    something else is closer to that thing.  And, well,

9    that is what I mean by closer.  I think that was

10   what you asked.

11             Q.    Yeah.  So it is your position that,

12   at least with respect to the language I just read,

13   that the use of the term "closer to" is -- it is

14   missing that relative connection, correct?

15             A.    Correct.

16             Q.    And that is what, in your opinion,

17   makes it indefinite, correct?

18             A.    Yes.

19             Q.    Okay.  Would you take a look at

20   Figure 9A as an example of the '550 Patent?

21             A.    Okay.

22             Q.    Okay.  As a mechanical engineer and

23   as an expert who submitted a declaration in this

24   case, you consider yourself as a person with

25   ordinary skill in the art with respect to

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 121

1    strollers, correct?

2          A.     With respect to the design, you know,

3    elements of strollers.

4          Q.     Okay.  So I mean you are familiar

5    with just the general components of a stroller,

6    correct?

7          A.     Yes.

8          Q.     Okay.  So for purposes of the claimed

9    invention and, you know, specifically if we refer

10   to Figure 9A, we are talking about strollers having

11   two stroller seats, correct?

12         A.     Yes.  That is what is depicted in

13   this figure.

14         Q.     And that is what is claimed as well,

15   correct?

16                MR. SMITH:  Objection to form.

17         A.     That is what is claimed.  You are

18   saying that is what is described in Claim 1?

19         Q.     (BY MR. LEONARD:)  Sure.  We can

20   start there, yes.  Claim 1 and as of the '550

21   Patent.

22         A.     Well, part of the claim talks about a

23   first seat and a second seat.

24         Q.     Okay.  Now, a stroller has a frame,

25   correct?

Page 122

1          A.      It can, yeah.

2          Q.      Are there situations in which a

3    stroller would not have some type of frame?

4          A.      I mean I -- yeah, I could probably

5    design one but --

6          Q.      Fair enough.  And generally there's

7    two ends of a stroller.  One end has the front

8    wheels, correct?

9                  MR. SMITH:  Objection, form.

10         A.      I mean do you want to refer to a

11   specific figure?  That might help.

12         Q.      (BY MR. LEONARD:)  Yeah.  Remember,

13   we are looking at Figure 9A.  I apologize if that

14   wasn't clear.

15         A.      Well, I mean you started talking

16   about strollers in general.  So what is the

17   question?

18         Q.      So one end of a stroller contains the

19   front wheels, correct?

20         A.      Yes.  I mean they are toward the

21   front.

22         Q.      Okay.  And at the opposite end would

23   be the handle or the handle portion, correct?

24                 MR. SMITH:  Objection to form.

25         Q.      (BY MR. LEONARD:)  I'm sorry.  Did I

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 123

1     miss your answer?

2              A.     I said yes.  The handle is in this

3     figure at a -- we will say it is at the right side

4     of the figure and the front wheels are at the left

5     side of the figure.

6              Q.     Okay.  That is helpful.  And again,

7     we are still looking at Figure 9A.  We have one

8     stroller seat that is labeled 86, correct?

9              A.     Correct.

10             Q.     Okay.  And we have a second stroller

11    seat that is labeled 85, correct?

12             A.     Correct.

13             Q.     All right.  Would you agree with me

14    that the stroller labeled 86 is closer to the

15    handle than it is to the front wheels?

16                    MR. SMITH:  Objection to form.

17             A.     So you are asking if the -- say it

18    again.

19             Q.     (BY MR. LEONARD:)  If the stroller

20    seat that is labeled 86 in Figure 9A is closer to

21    the handle than it is to the front wheels.

22                    MR. SMITH:  Objection to form.

23             A.     So I would say, you know, in this

24    view of the figure, that is generally a true

25    statement.  But that is not the issue here.

William W. Clark , Ph.D.                                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 124

1          Q.       (BY MR. LEONARD:)  Okay.  We can get
2     to that.  If we look at the stroller seat
3     labeled 85, would you agree with me that it is
4     closer to the front wheels than it is to the handle
5     portion?
6                    MR. SMITH:   Objection to form.
7          A.       Again, I would say in this figure I
8     could do a measurement in which it is closer to the
9     front wheels than the handle.  But again, that is
10    not the point here.
11         Q.       (BY MR. LEONARD:)  Okay.
12         A.       Because you have stated the
13    relativity here, and that is not stated in the
14    patent.
15         Q.       Okay.  But if we look again at
16    Claim 1 and if we read the entire claim in context,
17    I mean doesn't Claim 1 state that the first seat --
18    I will read it:  First seat coupled to the stroller
19    frame at a first vertical position of the stroller
20    frame closer to the handle of the stroller and --
21         A.       That is -- that is a phrase --
22         Q.       Go ahead.
23         A.       -- parsed by a semicolon.  So there's
24    nowhere in that phrase that gives the relative item
25    to which it is closer to.

William W. Clark , Ph.D.                    April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

                                                    Page 132

1            A.      No.  It can be, but it is also -- it
2       can be the whole line or two complete lines.
3            Q.      Okay.  Can something that is colinear
4       also be parallel?
5            A.      Not in a strict definition of
6       geometry because parallel lines, remember, don't
7       intersect.
8            Q.      Okay.  So it is your opinion that
9       something that is colinear can never be parallel?
10           A.      Well, by definition it is not
11      parallel.  It is colinear.  Parallel lines do not
12      intersect.  Colinear lines intersect at every
13      point.
14           Q.      Okay.  Would you agree that these
15      components, and I am referring to the red and the
16      blue components, that they are aligned in the same
17      direction?
18           A.      Well, that is what colinear is, yes.
19           Q.      So you would agree with that?
20           A.      Yes.
21           Q.      Okay.  Would you agree they have a
22      common axis?
23           A.      I'm sorry.  Common what?
24           Q.      Axis.  Axis, A-X-I-S.
25           A.      I don't think that is meaningful.

William W. Clark , Ph.D.                      April 29, 2025
Baby Jogger, LLC vs Monahan Products, LLC

Page 133

1       Lines don't have axes.
2              Q.     Well, if you drew a line through
3       these components, they would -- well, let me say it
4       this way.  Do they have the same slope?
5              A.     In this diagram and the fact that
6       they are colinear.  Slope requires definition of a
7       reference, but I mean we could pick a reference and
8       define the slopes as being the same.
9              Q.     Okay.  If we look at Figure 8A and
10      the way that these components are presented,
11      doesn't this demonstrate to a person of ordinary
12      skill how the components could be aligned when the
13      stroller is unfolded?
14             A.     It does.
15             Q.     Okay.  And if we keep going down, you
16      have included Figure 9 of '568 Patent, correct?
17             A.     Yes.
18             Q.     Okay.  And again you have highlighted
19      in blue the front wheel support portion and in red
20      the upper tube support frame, correct?
21             A.     Yes.
22             Q.     All right.  And these components have
23      a slight curvature to them, correct?
24             A.     Yes.  As far as I can tell from the
25      image, yes.