UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BABY JOGGER, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 24-cv-11582-ADB |
| MONAHAN PRODUCTS, LLC d/b/a UPPABABY, | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Baby Jogger, LLC ("Baby Jogger" or "Plaintiff") brings this action for patent infringement related to its convertible single-to-double stroller against Defendant Monahan Products, LLC d/b/a UPPAbaby ("UPPAbaby" or "Defendant"). [ECF No. 29 ("Amended Complaint" or "Am. Compl.")]. Currently before the Court is Defendant's summary judgment motion based on equitable estoppel. [ECF No. 41]. For the reasons set forth below, the motion is **DENIED**.

I.     **BACKGROUND**

    A.     **Material Facts**[1]

Baby Jogger owns several patents, including United States Patent No. 8,955,869 (the "'869 Patent"), United States Patent No. 9,403,550 (the "'550 Patent"), United States Patent No. 11,192,568 ("the '568 Patent"), U.S. Patent No. 11,505,231 (the "'231 Patent"), and United States Patent No. 11,878,729 (the "'729 Patent") (collectively, the "Asserted Patents"). [ECF No. 53 ¶¶ 2–6].

On December 4, 2015, Baby Jogger sent UPPAbaby a short letter, stating that it "has come to [Baby Jogger's] attention that UPPA[b]aby is selling products, such as the Vista stroller, that may be covered by one or more claims in the '869 patent." [ECF No. 53 ¶ 9 (quoting [ECF No. 42-2 at 2 (the "December 4 Letter")]. The letter attached a copy of the patent and further stated, "Please contact [Baby Jogger] within the next ten (10) business days to discuss potential resolution of this issue." [December 4 Letter]. On December 18, 2015, Baby Jogger sent UPPAbaby's counsel an email, which included a chart with "more detail on the features that [Baby Jogger was] concerned about." [ECF No. 53 ¶ 14 (quoting ECF No. 48-3 (the "December E-mail") at 2]. The December E-mail noted that Baby Jogger and UPPAbaby "are no longer talking about doing business together at this time" and that Baby Jogger "need[ed] to continue to be vigilant abouts its IP." [December E-mail at 2]. On December 30, 2015, UPPAbaby, through its counsel, responded to Baby Jogger's letter. [ECF No. 42-2 at 4–5 (the "December 30 Letter")]. Specifically, the December 30 Letter stated that "Newell Rubbermaid and UPPAbaby

---

[1] The Court draws the facts from the parties' combined Rule 56.1 statement of material facts, which consists of Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, [ECF No. 49], Defendant's Responses to Plaintiff's Statement of Additional Material Facts, [ECF No. 53], and documents referenced therein.

2

were in business discussions just prior to receiving [Baby Jogger's] letter"[2] and that "Newell Rubbermaid appears to be engaging in unfair business practices and attempting to disrupt UPPAbaby's business." [December 30 Letter at 1]. The letter cautioned Baby Jogger that before asserting "unfounded claims of infringement," it "should be made aware of several facts":

> First, the patent Newell Rubbermaid acquired from Baby Jogger was filed on April 25, 2014, and claims priority to a continuation application filed on December 4, 2009, which is now abandoned, and a provisional application filed on December 4, 2008. Second, UPPAbaby's Vista stroller was first sold in 2006, at least two years before the earliest application filed by Baby Jogger. Third, UPPAbaby's Rumble Seat was publicly disclosed in 2008, including at the ABC Tradeshow in September, 2008, before the earliest application filed by Baby Jogger. Fourth, Baby Jogger and UPPAbaby were on friendly terms in 2008 and both attended the ABC Tradeshow in September, 2008, where Baby Jogger representatives saw UPPAbaby's Rumble Seat.

[Id.]. Further, the December 30 Letter continued, if UPPAbaby's products, such as the Vista stroller, were covered by the '869 patent, it would mean that

> the '869 patent is invalid. UPPAbaby's Vista stroller was first sold in 2006, well before the earliest application relating to the '869 patent. Similarly, UPPAbaby's Rumble Seat was publicly shown in 2008, before the earliest filing date of Baby Jogger patent. In addition, to the extent that Baby Jogger representatives stole the idea from UPPAbaby, then the patent is invalid.

[Id.]. As to the December E-mail, UPPAbaby wrote that the infringement chart included in the e-mail did not

> explain why Newell Rubbermaid believes any element of any claim of the '869 patent is infringed. Instead, [Newell Rubbermaid] copied pictures of the UPPAbaby Vista stroller and Rumble Seat into a chart with no explanation. We do not see any basis in your chart for the allegations Newell Rubbermaid has made.

---

[2] Baby Jogger clarifies that Newell Rubbermaid is Baby Jogger's former corporate owner and that Baby Jogger, LLC is an indirect, wholly owned subsidiary of Newell Brands Inc., which was formerly named Newell Rubbermaid. [ECF No. 49 ¶ 15; ECF No. 2].

[Id. at 1–2]. UPPAbaby noted that it had dealt with Baby Jogger "in good faith during the prior discussions" and hoped that "Newell Rubbermaid will do the same and not attempt to continue to disrupt UPPAbaby's business." [Id. at 2].

Baby Jogger replied on March 15, 2016. [ECF No. 42-2 at 7–8 (the "March Letter")]. The March Letter stated that (i) the companies' prior business dealings referenced by UPPAbaby were "unrelated" to the present matter, (ii) Baby Jogger's investigation had been "based only on publicly available information" and Baby Jogger would be "happy to discuss" "any remaining specific concerns," and (iii) the product at issue was UPPAbaby's "current [rather than the 2008/09] version of the Rumble Seat," which it believed was "launched in the 2015 timeframe." [March Letter at 1]. Baby Jogger concluded the letter by writing that it was "look[ing] forward to working together towards a resolution." [Id. at 2]. After the March Letter, Baby Jogger took no further action against UPPAbaby until the filing of the Complaint on June 18, 2024, [ECF No. 49 ¶ 26], despite knowing that UPPAbaby continued to manufacture, sell, and offer its Vista and RumbleSeat products following the parties' pre-suit correspondence, [ECF No. 49 ¶ 29].

### B. Procedural History

Baby Jogger brought the instant action on June 18, 2024. [ECF No. 1]. After UPPAbaby moved to dismiss the Complaint, [ECF No. 27], Baby Jogger filed its Amended Complaint on September 27, 2024, [Am. Compl.]. On December 20, 2024, UPPAbaby moved for summary judgment, [ECF No. 41], Babby Jogger opposed on January 24, 2025, [ECF No. 48], and UPPAbaby filed a reply on February 7, 2025, [ECF 52].

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  An issue is considered "genuine" when "the evidence of record permits a rational factfinder to resolve it in favor of either party."  Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4–5 (1st Cir. 2010) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  A fact is considered "material" when "its existence or nonexistence has the potential to change the outcome of the suit."  Id. at 5 (citing Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995)).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must direct [the Court] to specific evidence in the record that would be admissible at trial."  Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015).  "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'"  Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  Once the moving party has laid out its basis for summary judgment, the burden shifts to the party opposing summary judgment to demonstrate, "with respect to each issue on which she would bear the burden of proof at trial, . . . that a trier of fact could reasonably resolve that issue in her favor."  Borges, 605 F.3d at 5.

On a motion for summary judgment, the Court reviews "the entire record in the light most hospitable to the party opposing summary judgment."  Podiatrist Ass'n v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).  Where inferences are to be drawn from the proffered facts, those inferences "must be viewed in the light most favorable to the party opposing the motion."  Oleskey ex rel. Boumediene v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (citing Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir.

1979)).  The Court, however, "safely may ignore conclusory allegations, improbable inferences, and unsupported speculation."  Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (internal quotation and citation omitted).

### III. DISCUSSION

UPPAbaby argues that Baby Jogger's claims are barred by the doctrine of equitable estoppel because the parties' "letter correspondence preceded this litigation by eight years of inaction."  [ECF No. 42 at 13].

The three elements of an equitable-estoppel defense to a patent-infringement claim are:

> a. The patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer.  "Conduct" may include specific statements, action, inaction, or silence where there was an obligation to speak.
> b. The alleged infringer relies on that conduct.
> c. Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

Scholle Corp. v. Blackhawk Molding Co., 133 F.3d 1469, 1471 (Fed. Cir. 1998) (quoting A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc), abrogated on other grounds by SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 580 U.S. 328 (2017)).

"[W]hen the course of dealings between a patentee and an alleged infringer is such that the alleged infringer reasonably infers from the patentee's misleading conduct of inaction that the patentee has waived its patent rights, then the first element of equitable estoppel has been established absent a statement to the contrary by the patentee." Scholle, 133 F.3d at 1472; see also Aspex Eyewear Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305, 1310 (Fed. Cir. 2010) ("[A] patentee's silence and inaction can be misleading in the context of the specific interaction between the parties."); Aukerman, 960 F.2d at 1042 ("[P]laintiff's inaction must be combined

with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned."). "Put otherwise, misleading conduct occurs where an accused infringer can reasonably infer from a patent owner's conduct or silence that the patent owner has known of the allegedly infringing activities for some time without having asserted its rights." Fraunhofer-Gesellschaft zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc., No. 2023-2267, 2025 WL 1617966, at *5 (Fed. Cir. June 9, 2025). "In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years." Aukerman, 960 F.2d at 1042. "[T]he longer the [patentee's] delay" in filing suit, "the stronger the inference becomes" that the patentee has abandoned its claim. Id. at 1044.

Additionally, "[t]he accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action." Id. at 1042–43. "[T]here is a difference between prejudice that results from delay and prejudice that is due to reliance upon delay." SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 767 F.3d 1339, 1347 (Fed. Cir. 2014) (quoting Meyers v. Asics Corp., 974 F.2d 1304, 1308 n.1 (Fed. Cir. 1992)).[3] To show reliance, a defendant "need not prove precisely what alternative paths it would have taken, or that every marketing decision was based on [the patentee's] silence." Aspex, 605 F.3d at 1312. But the defendant "must nevertheless establish that it at least considered [the patentee's] silence or inaction and that such consideration influenced its decision[s]." Fraunhofer-Gesellschaft, 2025 WL 1617966, at *5.

---

[3] "The three-judge panel's treatment of equitable estoppel in SCA Hygiene remains good law," despite the Supreme Court's vacatur of the Federal Circuit's en banc decision on the issue of laches. Fraunhofer-Gesellschaft, 2025 WL 1617966, at *3 n.3.

UPPAbaby is not entitled to summary judgment because it has failed to establish both the first element (misleading conduct) and the second element (reasonable reliance) of equitable estoppel.

With respect to the first element, UPPAbaby contends that Baby Jogger's eight years of inaction following the parties' correspondence constitute misleading conduct because that inaction led UPPAbaby to believe that Baby Jogger did not intend to enforce its patent against it. [ECF No. 42 at 13–14]. Specifically, UPPAbaby argues that because Baby Jogger did not respond to the unfair business practice allegations or expressly deny that its representative stole the idea from UPPAbaby seven years earlier, it understood "the tone and content of [the March Letter] to represent closure," with UPPAbaby abandoning any infringement claims. [ECF No. 42 at 5, 14–15].

It is undisputed that after sending the March Letter in 2016, Baby Jogger took no further action against UPPAbaby until the filing of the Complaint on June 18, 2024. [ECF No. 49 ¶ 26]. That said, because Baby Jogger's inaction "must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against [UPPAbaby] is abandoned," the question for the Court is whether the record compels such an inference. Aukerman, 960 F.2d at 1042; see also id. at 1044 ("[O]n summary judgment, such inference [that the patentee has abandoned its claim] must be the only possible inference from the evidence.").

Here, the relevant items of record include the three letters and one e-mail exchanged between December 2015 and March 2016. From this limited record UPPAbaby first asks the Court to conclude that as a result of the breakdown in confidential business discussions—the nature of which is entirely unknown to the Court—Baby Jogger "attempted to disrupt

8

UPPAbaby's business." [ECF No. 42 at 14]. The Court finds little support for this assertion in the record.[4] Second, UPPAbaby argues that its December 30 Letter, which stated that "Newell Rubbermaid appears to be engaging in unfair business practices and attempting to disrupt UPPAbaby's business," indicated that it was "prepared to assert its claim if sued for patent infringement." [ECF No. 42 at 14]. Based on the documents before it, including the wording of the letter, the Court cannot make such a leap. Nor may the Court draw inferences in UPPABaby's favor regarding UPPABaby's understanding of the March Letter—and, more specifically, UPPAbaby's belief that the March Letter reflected the parties' agreement not to sue each other—based on what that letter "did not say." [ECF No. 42 at 15]. See Podiatrist Ass'n, 332 F.3d at 13 (requiring court to "indulg[e] all reasonable inferences" in the non-moving party's favor (citation omitted)).

In the Court's view, the record as it stands arguably supports, but does not go so far as to require, the inference that Baby Jogger's inaction was misleading "in the context of the specific interaction between the parties." Aspex, 605 F.3d at 1310. The fact that Baby Jogger specifically objected to activities by UPPAbaby asserted as infringement in this lawsuit and then did not follow up for eight years doubtless supports the inference that Baby Jogger abandoned its claim, an inference strengthened by the length of Baby Jogger's delay. See Aukerman, 960 F.2d at 1044. But a trier of fact could reasonably draw a contrary inference from the March Letter— in which Baby Jogger responded to UPPAbaby's arguments regarding the invalidity of '869 Patent and stated it "look[ed] forward to working together towards a resolution," [March Letter

---

[4] To the extent UPPABaby relies on the declaration of Trung Phung, the company's President, the Court notes that the declaration offers no insight into what the confidential business conversations entailed or why he believes the breakdown of those discussions led to the December 4 Letter. See generally [ECF No. 42-1].

9

at 2]—namely that, far from abandoning its claim, Baby Jogger had "clarif[ied]" which products were at issue in its claim and would continue to press it. [March Letter at 1]. Since neither inference is "the <u>only</u> possible inference," the Court declines to hold that Baby Jogger's conduct was misleading as a matter of law. <u>Aukerman</u>, 960 F.2d at 1044.[5]

Although the Court is skeptical that the record establishes, as a matter of law, that Baby Jogger's inaction was sufficiently misleading "in the context of the specific interaction between the parties," <u>Aspex</u>, 605 F.3d at 1310, a period of eight years is certainly stretching the limits. For this reason, the Court proceeds to consider the second element of equitable estoppel (reliance), which UPPAbaby has more clearly failed to establish.

With regards to reliance, UPPAbaby claims it suffered both economic and defensive prejudice in reliance on Baby Jogger's conduct. [ECF No. 42 at 16–21]. In support, UPPAbaby points to "its continued investment in the accused Vista stroller and RumbleSeat . . . <u>after</u> Baby Jogger accused [UPPAbaby] of infringement in 2015" and to the "fact that the parties mutually

---

[5] <u>Scholle</u>, a case relied on by UPPAbaby, is distinguishable from the instant action. There, plaintiff sent a cease-and-desist letter to defendant yet refused to identify the alleged infringed claims despite being prompted twice to do so by defendant. <u>Scholle</u>, 133 F.3d at 1470. Defendant also presented a new product to plaintiff and communicated that it would consider the product non-infringing unless it was advised otherwise by plaintiff, who offered no response to the communication. <u>Id.</u> Further, in the three years leading up to the filing of the lawsuit, the parties' high-level corporate executives "had numerous contacts," with "[m]any of those contacts concerning" the patent-in-suit. <u>Id.</u> at 1472. In light of the parties' interactions, the Federal Circuit determined that defendant reasonably inferred that plaintiff did not intend to enforce its patent. <u>Id.</u> In contrast here, the parties' exchange was limited to just a few months, rather than interactions spanning several years, and the final communication came from the plaintiff, not the defendant. The plaintiff's conduct and communications in <u>Aspex</u> strike the Court as distinguishable for similar reasons. See <u>Aspex</u>, 605 F.3d at 1308 (where parties had previously engaged in patent litigation, plaintiff notified defendant of its "strong intention to fully and vigorously enforce [its] rights," describing it as a "very urgent and serious matter," defendant responded, and plaintiff did not follow up with respects to the patents in suit for three years).

10

withheld suit against each other for 8.5 years." [ECF No. 52 at 8]; see also [ECF No. 42-1 ¶¶ 19–23].

As an initial matter, neither of these facts—UPPAbaby's investment in its products and its decision not to sue Baby Jogger for unfair business practices—is undisputed. See [ECF No. 49 ¶¶ 34–35]. More fundamentally, UPPAbaby identifies no fact in the record—and the Court has found none—showing a nexus between UPPAbaby's alleged prejudice and its reliance on Baby Jogger's silence. It is undisputed that Baby Jogger knew that UPPAbaby continued to sell the Vista stroller and the RumbleSeat after the parties' correspondence. [ECF No. 49 ¶ 29]. But UPPAbaby has not adduced any evidence that it "considered" Baby Jogger's inaction in deciding to continue selling and investing in the accused products. Fraunhofer-Gesellschaft, 2025 WL 1617966, at *5. And, as discussed above, the record does not indisputably establish that UPPAbaby was prepared to assert a claim for unfair business practices in response to an infringement suit by Baby Jogger, let alone that UPPAbaby forwent such a claim in reliance on Baby Jogger's inaction. Because UPPAbaby has not shown that "in fact, it substantially relied on" Baby Jogger's inaction "in connection with taking some action," UPPAbaby has failed to establish reasonable reliance at this stage in the litigation. Aukerman, 960 F.2d at 1042.

Accordingly, because the Court finds that UPPAbaby has not satisfied the first or second element of its equitable-estoppel defense, the motion is **DENIED**.[6]

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment, [ECF No. 41], is **DENIED**.

---

[6] UPPAbaby may raise the defense of equitable estoppel at a later time once a more fulsome factual record is established if warranted.

11

**SO ORDERED.**

June 24, 2025                                                                                             */s/ Allison D. Burroughs*
                                                                                                              ALLISON D. BURROUGHS
                                                                                                              U.S. DISTRICT JUDGE